MATTHEWS, Respondent, v. SCHUH and others, Appellants.

*November 5—December 2, 1958.*

For the appellants there were briefs by *Cornelisen, Denissen, Farrell & Kranzush* of Green Bay, and oral argument by *Eugene Kranzush*.

For the respondent there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *J. Robert Kaftan*.

WINGERT, J. 1. *Defendants' appeal.* We are obliged to reverse the judgment, for we cannot escape the conclusion that plaintiff's negligence was at least as great as Schuh's, as a matter of law.

In passing on the jury's 35 per cent–65 per cent apportionment of negligence, we must resolve conflicts in the evidence in favor of the plaintiff, except in the particulars where

the jury's verdict confirms defendants' version of the accident. *Henschel v. Rural Mut. Casualty Ins. Co.* 3 Wis. (2d) 34, 36, 87 N. W. (2d) 800. The jury's verdict establishes that plaintiff entered the intersection against the stop light and that Schuh had the green light and was driving at a rate of speed consistent with ordinary care.

Plaintiff was guilty of a very high degree of negligence, on his own testimony and the jury's verdict. He did not clean the frost off his left front window. He entered the intersection of two important streets against the red light and kept on going. He looked neither to the left nor right. He did not see either the truck or its lights, although it must have been within 100 feet of him when he entered the intersection. We seldom encounter an intersection case where a driver has more completely disregarded his own safety.

Schuh's negligence was also serious. He had the green light, as the jury found, but he did not see the plaintiff until Schuh was at the south crosswalk and plaintiff was five or six feet into the intersection, and obviously he was not keeping a proper lookout, especially in view of the unwieldy nature of his vehicle. It is true there were some blind spots as the result of poles on the corner, but the building at the southeast corner of the intersection was far enough back from the street so that from a point 46 feet south of the crosswalk in the center of Broadway (Schuh's left wheels were only two feet east of the center line) one could see an object 54 feet east of the crosswalk on the center line of Dousman street. A disinterested witness testified that at a point about 100 feet south of the intersection, Schuh was gaining speed. When he finally did see plaintiff's car Schuh had 44 feet in which to stop, but not only did he fail to stop, but at the point of impact he was going at such a rate that he traveled 48 feet ahead after squarely hitting the heavy Buick. He did not swerve at all to avoid the impact.

From these facts plaintiff argues that Schuh was driving too fast in view of the great weight of his truck (36,000 pounds) and that his inability to stop and his failure to turn to avoid a collision shows an utter lack of control of his vehicle, from which the jury could reasonably find that Schuh was even more negligent than plaintiff. It is also argued that since Schuh was going twice as fast as plaintiff, he had a better chance to see plaintiff than plaintiff had to see Schuh.

These arguments are based on Schuh's speed and faulty management of his vehicle. The jury found, however, that Schuh was not negligent with respect to speed, and we cannot say that the finding is without support in the evidence, accepting, as we must, the premise that Schuh had the green light to go ahead across the intersection, while cross traffic was prohibited by a red light. No question of management and control was submitted to the jury and none was requested. On this state of the record, there is no basis for a finding that Schuh was more negligent than plaintiff.

Plaintiff relies, as did the trial court, on *Schmidt v. Leary,* 213 Wis. 587, 252 N. W. 151, where it was held error to change the jury's answer allocating 90 per cent of the negligence to Leary, although Schmidt and Leary were each found guilty of negligence as to speed, lookout, and management and control, and Schmidt was also found guilty of passing a red stop light. That case may be distinguished, for there, as this court stated (p. 591):

". . . the degrees of the negligence of the parties in the several particulars may have differed widely, and the total negligence of the defendant may thus have exceeded that of the plaintiff's husband. The defendant's want of vigilance as to lookout may have been greater than that of plaintiff's husband; his speed may have been greater; his want of care in controlling his car may have been greater; he may have entered the intersection last; he was approaching from plaintiff's left."

In the present case Schuh's only found negligence was in lookout, and in that respect it was certainly no worse than the flagrant carelessness of plaintiff in keeping no lookout whatever for cross traffic, in addition to which plaintiff ran the stop light.

There is a serious doubt, which we need not resolve, as to the propriety of the finding that Schuh's deficient lookout was a cause of the collision. He saw plaintiff only a fraction of a second after plaintiff entered the intersection and when plaintiff was only five or six feet into the intersection. If Schuh had seen plaintiff say 50 feet east of the intersection, he would have seen plaintiff slowing down for the stop light, and since Schuh had the green light, he would naturally have supposed that plaintiff was stopping at the red light. Only just at the crosswalk, when he was slowed down to 10 or 12 miles per hour, did plaintiff decide to proceed into the intersection; and that was only a few feet and a fraction of a second before Schuh saw him. Had Schuh been watching plaintiff for a block, he could not have anticipated danger of a collision materially sooner than he did.

2. *Motion to review.* Plaintiff moves that if the present verdict be set aside, he be granted a new trial on the ground of error in an instruction to the jury on the vital question of failure to obey the traffic-control lights.

The essential part of the instruction was as follows:

"*In this case,* both drivers claim that the traffic light or 'go' signal was facing them as they neared and proceeded to cross the intersection in question. It was a physical impossibility for this to happen. . . .

"You cannot answer both subdivisions (c) of the first and third questions 'Yes' *under the evidence*; nor can you answer both of them 'No.' "

Plaintiff argues that this instruction would have been proper only in a case where both drivers entered the intersection at the same time and at about the same speed, and

where as here one entered later and faster than the other, both may have disobeyed the traffic signal. The sequence of the lights was as follows: Green followed by two and one-half or three seconds of amber, followed by red, followed by green, etc.

We see no merit in the criticism. Whether or not it would have been theoretically possible for drivers from the east and south both to enter the intersection in comparable sequence against the red light, the court instructed on the evidence in the particular case, where each driver claimed to have the *green* light in his favor. The instruction was carefully limited to that claim, and the jury were told they could not answer both questions either "Yes" or "No," "under the evidence." As we understand the operation of the lights, that was a correct statement. If, as plaintiff testified, the east-facing light turned green just as he reached the crosswalk, Schuh's light must have been red when he entered the intersection a moment later. Conversely, if, as Schuh testified, the south-facing light turned green in his favor when he was in the middle of the block, the light facing plaintiff must have been red when he entered the intersection; for at 20 or 25 miles per hour it would have taken Schuh only some four to seven seconds to reach the intersection from the middle of the block, and plaintiff reached it only momentarily sooner.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.

BROWN, J., took no part.