PLOG, Respondent, vs. ZOLPER and others, Appellants.

*September 11—October 8, 1957.*

518

For the appellants there was a brief by *Holden & Schlosser* of Sheboygan, and oral argument by *Wayne W. Schlosser*.

For the respondent there was a brief by *Strehlow & Cranston* and *Kaftan, Kaftan & Kaftan,* all of Green Bay, and oral argument by *Fred F. Kaftan.*

STEINLE, J.   The defendants raise the following questions on this appeal:

Did the court err in failing to submit a question in the special verdict inquiring as to negligence on the part of Henry Plog in respect to right of way?

Did the court err in failing to submit a question in the special verdict inquiring as to negligence on the part of Henry Plog in respect to speed?

Was the plaintiff, Henry Plog, negligent in respect to failing to yield the right of way to the vehicle driven by Vernon Zepnick as a matter of law?

Was the negligence of Henry Plog equal to or greater than the negligence of Vernon Zepnick?

The evidence of the defendants indicates that Vernon Zepnick was driving the Zolper pick-up truck in a westerly direction on East Walnut street, an artery for through traffic. When approaching South Madison street, a nonarterial street, the Zolper truck was traveling in the westbound lane of traffic at a speed of 20 to 25 miles per hour. Zepnick first noticed the car driven by the plaintiff Plog when Zepnick was 20 feet east of the east curb line of South Madison street. Plog's car at that time was proceeding in a northerly direction on South Madison street, and was emerging from behind a semitrailer truck which was eastbound on East Walnut street and was traveling at a rapid rate of speed. Upon seeing Plog's car, Zepnick immediately applied his brakes and turned somewhat to the right. The front of the truck driven by Zepnick struck the right side of Plog's car at the

middle doorpost. Zepnick proceeded to drive forward four to six feet after the impact, and brought his truck to a stop east of the center of South Madison street.

The evidence of the plaintiff, Henry Plog, indicates that Plog stopped his car at the stop sign on South Madison street just south of East Walnut street. He was very well acquainted with the intersection, having crossed it many times before. Before making the actual stop at the stop sign, Plog had stopped behind two other vehicles which were also stopped for the arterial,—one a box truck, and the other a yellow car. The box truck turned to the right on East Walnut street and the yellow car turned to the left on said street.

In part the plaintiff's testimony as to events then occurring, is as follows:

(Direct Examination.)

"*Q.* And when the yellow car went west, on Walnut, what did you do? *A.* Well, I stopped. I went up to the line, and I looked, looked left and there was nothing coming, and I looked right and I didn't see anything as far as I could see.

"*Q.* What did you see? *A.* There was nothing. There was nothing down there. I looked right, and, well, there was nothing coming.

"*Q.* How far did you see when you looked right? *A.* Oh, I should judge that would be probably 150 feet.

"When I was three quarters of the way across the intersection my car was hit in the middle post on the right side. . . . I couldn't tell you that. I couldn't tell you how fast it was coming. . . . There was no car coming. No, I didn't see nothing coming; only that red flash, and I was thrown in the air. I didn't look; I was looking ahead to go across the street. . . ."

(Cross Examination.)

"*A.* I didn't see nothing until I was hit. . . .

"*Q.* You wouldn't know how fast you were going? *A.* I have an eight cylinder Pontiac that gets across pretty fast, as fast as anybody would go across the street. I have gone across that street forty years. . . .

"I was going across the street fast like I always go. . . . I told the officer I was probably going 20 m. p. h. I would say 20 miles an hour was my speed. . . . I gave the officer my best estimate. As I say, my Pontiac is an eight cylinder, and don't stall around any place. You don't stall around on Walnut street anyway. . . .

"When the truck came to a stop I think it was about four feet or so into the intersection. . . .

"*Q*. You waited quite a while to get across the street? *A*. No, I didn't wait a while—I am not in the habit of waiting. When I cross the street, I want to get across.

"*Q*. You go right across? *A*. I go across, yes."

The plaintiff's evidence also indicated that the front of his car was in line with the north crosswalk at the time of impact. After the impact Plog's car moved in a northwesterly direction, leaving scuff marks eight to ten feet in length. It collided with a vehicle that was stopped at the stop sign at the northwest corner of the intersection. After the collision, the distance between the front of the truck driven by Zepnick and the rear of the Plog car was 25 feet. Plog testified that no vehicle crossed the intersection from west to east at South Madison and East Walnut streets between the time when he looked to his right for 150 feet and the time when the collision occurred. Plaintiff also testified that the truck operated by Zepnick was stopped about four feet into the intersection of South Madison street after the impact.

The defendants maintain that the court erred in not specifically submitting for the jury's consideration the matter of plaintiff's failure to yield the right of way. Sec. 85.18 (4), Stats. 1955, applicable in this case, provides:

"*Vehicles stopping for arteries for through traffic.* The operator of a vehicle shall stop as required by section 85.69 before entering an artery for through traffic, and shall yield the right of way to other vehicles which have entered or are approaching the intersection upon the artery for through traffic."

Sec. 85.69, Stats. 1955 (referred to in sec. 85.18 (4), *supra*), provides:

"VEHICLES TO STOP AT ARTERY FOR THROUGH TRAFFIC SIGNS. It shall be unlawful for the operator of any vehicle, and every device in, upon, or by which any person or property is or may be transported or drawn upon a public highway, to fail to come to a full and complete stop within 30 feet of the near limits of an intersection at which ,has been erected an official stop sign or traffic signal designating an artery for through traffic."

Sec. 85.18 (4), Stats. 1955, was amended by ch. 531, Laws of 1955, and became effective on August 9, 1955. Previous to that time sec. 85.18 (4) read as follows:

*"Vehicles stopping for arteries for through traffic.* The operator of any vehicle that has come to a full stop as required by section 85.69, upon entering an artery for through traffic, as well as operators of vehicles on such artery for through traffic, shall be subject to the provisions of subsection (1)."

Sec. 85.18 (1), Stats., referred to in sec. 85.18 (4) as in effect prior to August 9, 1955, read:

*"Right of way at intersections.* When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right, except as otherwise provided in this section. The driver of any vehicle driving at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder. . . ."

The provisions of sec. 85.18 (1), Stats., were not changed ○ by the legislature in 1955 and were effective at the time of the collision in question.

It is the position of the plaintiff that there is no material difference in the controlling language of sec. 85.18 (4), Stats. 1955, and that contained in secs. 85.18 (8) and 85.18 (9).

Sec. 85.18 (8), Stats., provides:

"*Vehicles emerging from alleys or private driveways to stop.* The operator of a vehicle emerging from an alley, private driveway, or garage shall stop such vehicle immediately prior to moving on to the sidewalk or sidewalk area extending across the path of such vehicle, or if there is no sidewalk or sidewalk area then before crossing the near limits of the roadway."

Sec. 85.18 (9), Stats., provides:

"*Emerging from alley or private driveway.* The operator of a vehicle entering a public highway from an alley, garage, or private driveway shall yield the right of way to all vehicles approaching on such highway."

Plaintiff submits that since the language of sec. 85.18 (9), Stats., has heretofore received definite interpretation by this court particularly in *Carlson v. Strasser* (1942), 239 Wis. 531, 2 N. W. (2d) 233, and *Heinecke v. Hardware Mut. Casualty Co.* (1953), 264 Wis. 89, 58 N. W. (2d) 442, like construction must be placed on the provisions in sec. 85.18 (4), Stats. 1955.

We concur in the view that the language of the provisions in sec. 85.18 (4), Stats., is similar in import to that contained in secs. 85.18 (8) and 85.18 (9). Our concern is with the construction heretofore placed upon sec. 85.18 (9) in so far as submission in verdict form is concerned.

Plaintiff points out that in *Carlson v. Strasser, supra,* it was held that when the operator of a vehicle emerging from a private driveway stops at the sidewalk or street, he is bound (1) to maintain a proper lookout so as to ascertain the approach of any vehicles, and (2) having seen the approaching vehicle, he must exercise reasonable judgment in calculating as to his chance of entering the highway without interfering with the approaching vehicle. If he is guilty of negligence in either respect, he cannot be guilty of negligence as to right of way also, for such would be a duplication of negligence, since the omission which brought about the fail-

ure to yield the right of way was either lookout or miscalculation.

In *Carlson v. Strasser, supra,* the operator of a truck was proceeding from a private driveway onto the highway where a collision with another vehicle occurred. The trial court submitted questions both as to negligence with respect to lookout and negligence with respect to yielding the right of way. The jury found that the operator was negligent as to lookout, but was not negligent in having failed to yield the right of way. This court said (p. 536) :

"While the failure to look must be connected with the failure to yield the right of way by an operator of a vehicle entering a public highway from a private driveway, the failure to look would exist as an essential element only if it resulted in a negligent failure to yield the right of way. . . . Had the jury under proper instructions been told that if they found that failure to look was the causal negligence, they need not answer further upon the point of right of way, they would not have brought the confusing answers which now present inconsistent findings leaving the special verdict failing to show with sufficient clearness that respondent's conduct was the cause."

In *Heinecke v. Hardware Mut. Casualty Co., supra,* Louis Anderson, the operator of a truck drove onto the highway and collided with another vehicle. This court said (p. 94) :

"Applied to this case, before entering upon the highway it was Anderson's duty to make a proper lookout. It was his duty by such lookout to look a sufficient distance to ascertain that anyone approaching upon the highway at a lawful rate of speed would not interfere with his entering upon and reaching his proper position upon the highway. If he did not look a sufficient distance or if he did not see a vehicle approaching within that distance, then he failed to make a proper or efficient lookout. Having made his observation, he then had to exercise reasonable judgment in calculating the time it would take him to enter and reach his proper position on the highway. If he did not make a reasonable

calculation, then he was negligent. Both questions are to be determined by the jury."

From a consideration of the principles enunciated in *Carlson v. Strasser* and *Heinecke v. Hardware Mut. Casualty Co., supra,* it appears that the duty of lookout on the driver of a motor vehicle entering upon a public highway from a private driveway, includes not only the obligation of looking for a sufficient distance to ascertain whether anyone approaching upon the highway at a lawful rate of speed would not interfere with his entering upon and reaching his proper position upon the highway, but also includes the requirement that after having made the observation, he shall then exercise reasonable judgment in calculating the time it would take him to enter and reach his proper position on the highway. The accuracy of such calculation is dependent upon the efficiency with which the distance away and speed of the approaching vehicle is evaluated. We, therefore, deem that failure to properly evaluate what is seen is as much an element of lookout as not seeing the approaching vehicle at all.

While in the case at bar the court submitted for the jury's consideration the question of the plaintiff's failure to have made a proper observation, the question as to plaintiff's negligence with reference to calculation was conditioned upon a previous finding that a proper observation had not been made. We think, as indicated in *Heinecke v. Hardware Mut. Casualty Co., supra,* that both such matters ought to be determined by the jury. In the case at bar it was not a proper submission to have conditioned the answering of the question as to negligence with respect to calculation upon a negative finding as to plaintiff's failure to make proper observation. Lookout is to be submitted to the jury in but one question under proper instructions by the court both as to matters of observation and calculation.

Notwithstanding any inference in *Carlson v. Strasser, supra,* to the contrary, we are of the opinion that in situa-

tions under sec. 85.18 (4), Stats. 1955, and sec. 85.18 (9), questions as to both failure to exercise a proper lookout and failure to yield the right of way are to be submitted to the jury. The determinations with respect thereto are proper items to be considered by the jury in the comparing of the negligence of the parties.

Sec. 85.18 (4), Stats. 1955, prescribes that one operating a vehicle on a nonarterial highway shall stop when arriving at an arterial highway, and before entering the arterial highway shall "yield the right of way to other vehicles which have entered or are approaching the intersection upon the artery for through traffic." Under this language it seems clear that one operating a vehicle on an arterial highway, when entering or approaching an intersection, has an absolute right of way over an operator of a vehicle on a nonarterial highway who is obliged to stop, observe, and calculate before entering the arterial highway.

The term "entering" obviously means "going or moving into." The term "approaching" involves a concept of drawing near in space and time. In *Vogel v. Vetting* (1953), 265 Wis. 19, 60 N. W. (2d) 399, the court was called upon to treat with sec. 85.18 (1), Stats., which provides that when two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right, but that the driver of any vehicle driving at an unlawful speed, shall forfeit any right of way which he might otherwise have under the statute. In that case the plaintiff contended that the two cars involved did not approach or enter the intersection at approximately the same time and he attempted to establish his claim to such effect by mathematical computation based on the speed at which the cars were traveling. The court said (p. 27) :

"The question depends largely upon the danger of the collision when the relative distances and speeds of the two

vehicles are considered. If they indicate danger of collision if the two vehicles continue on their respective courses at the same rates of speed, the vehicle approaching from the left should yield the right of way."

It seems to us that the term "approaching the intersection" as employed in sec. 85.18 (4), Stats. 1955, has a related meaning to the language in *Vogel v. Vetting* just above quoted, and that under said statute, a vehicle on an artery for through traffic may properly be said to be approaching the intersection, when it is not so far distant therefrom that considering the rate of speed at which it is traveling, it would be reasonable to assume that a collision would occur were a vehicle, stopped at the intersection, to start in motion and move into the path of the vehicle on the artery for through traffic. It is to be noted that sec. 85.18 (4) no longer contains the provision as did its predecessor statute, that the "driver of any vehicle driving at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder. . . ."

We are obliged to determine that the duty of lookout of the operator of a vehicle on a nonarterial highway, and the right of way of an operator of a vehicle on an arterial highway, as such obligation and right respectively have been defined herein, are both relevant to situations within the application of secs. 85.18 (4) and 85.18 (9), Stats. Since we are compelled to make disposition of the cause at bar on a basis other than consideration of right of way, it is not necessary that we determine defendant's contention that under the circumstances presented in this case, the plaintiff was negligent as a matter of law in failing to yield the right of way.

In the instant case the plaintiff testified that he looked and was able to see for 150 feet east of Walnut street, but that he did not observe the truck operated by Zepnick as it approached the intersection. Zepnick was exonerated by the jury of traveling at an excessive rate of speed. Obviously

the truck was in plain sight to one situated as was the plaintiff. It is well established that to look and not to observe what is in plain sight, is no better than not to have looked at all. In *Kloss v. American Indemnity Co.* (1948), 253 Wis. 476, 34 N. W. (2d) 816, both drivers claimed that immediately before the collision they looked but saw nothing, when in fact both were very close to each other, and each ought to have been observed by the other. It was held that the causal negligence to one as to lookout was as great as that of the other as a matter of law. In the instant matter Zepnick testified that his view of the plaintiff's vehicle was obstructed by the presence of an eastbound semitrailer truck from behind which the plaintiff's vehicle emerged in the intersection. When Zepnick was first able to observe it, his own truck at the time was 20 feet from the intersection. Obviously the jury did not accept such testimony and determined that Zepnick had failed in the matter of proper lookout. The situation is comparable to that in *Kloss v. American Indemnity Co., supra,* and we are obliged to determine that the causal negligence of the plaintiff and that of Zepnick as to lookout was equal as a matter of law.

As to the defendant's contention that the court erred in not submitting a question in the special verdict inquiring as to negligence on the part of the plaintiff in respect to speed, it appears that the only evidence of record relating to the actual speed of plaintiff's vehicle was the plaintiff's testimony that he had attained a speed of 20 miles per hour at the time of impact. The testimony of the plaintiff to the effect that he was traveling across the intersection as fast as his car would go across the street from the stopped position, was a matter to have been considered in connection with any failure to have yielded the right of way.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint upon its merits.