HENSCHEL, by Guardian *ad litem,* and another, Respondents, vs. RURAL MUTUAL CASUALTY INSURANCE COMPANY and another, Appellants.

*January 6—February 4, 1958.*

For the appellants there was a brief by *Curley & Sheedy* of Milwaukee, and oral argument by *Patrick J. Sheedy*.

For the respondents there was a brief and oral argument by *Charles Saggio* of Milwaukee.

WINGERT, J. Appellants contend that as a matter of law (1) the negligence of Henschel was at least equal to that of Jungbluth, and (2) Henschel's negligence with respect to lookout was a cause of the accident; and that therefore the

trial court erred in not granting the defendants' motions after verdict directed to the jury's findings on those matters. We find no error, and therefore affirm.

1. *Apportionment of negligence.* In reviewing the verdict we need consider only the evidence most favorable to Henschel, except in so far as acceptance of that evidence is precluded by findings of the jury adverse to him. While the jury found that Henschel failed to stop at the stop sign 16 feet south of West Layton street before starting to cross that arterial, there was evidence from which the jury could believe that Henschel slowed down to a speed of seven or eight miles per hour just before entering the intersection, looked to the right on West Layton and saw Jungbluth an estimated 250 to 300 feet away, thought he had plenty of time to get across, and continued across the intersection, and did in fact get entirely across before the impact, which the jury could have found took place three or four feet north of the intersection.

Jungbluth admitted that he may have been driving 50 miles per hour in a zone in which 40 miles per hour was the posted maximum permissible rate of speed, and from the skid marks the jury would have been warranted in believing that he was driving considerably faster than his admitted speed. While Jungbluth testified that he saw Henschel's car approaching the intersection at a much slower speed while Jungbluth was 200 feet east of the intersection, and kept it in view, there was evidence that he did not act to reduce his speed until he was about 120 feet from the intersection; that he then became excited, "jammed on" his brakes, partially lost control of his car, and slid the wheels for 107 feet to the point of impact, going partially off the pavement and on the shoulder in the process, and skidded another 47 feet after the impact before coming to rest, and that he did nothing to turn his car to the left so as to avoid the collision, although nothing was coming from the west.

Without laboring the point, we think that in such a case the apportionment of negligence presented a jury question and that the jury may reasonably have considered that plaintiff's error in judgment in crossing the 20-foot highway when the oncoming car seemed so far away was less than that of defendant in maintaining such a high and unlawful speed so close to the intersection.

2. *Causation.* While normally a negligent failure to keep a proper lookout to the right is a contributing cause of an intersection collision with a vehicle approaching from that direction, it is not always necessarily so. In the present case we think the jury's verdict that Henschel was negligent with respect to lookout but that such negligence was not causal may be sustained.

The only direct testimony as to Henschel's lookout was his own. He testified that he stopped at the stop sign (which the jury apparently did not believe), and looked east and saw a car coming about 500 feet away; that he then "inched" slowly up to the edge of West Layton, looked again and saw the oncoming car 250 or 300 feet away; that he continued onward and when he was partly in the north lane of West Layton, "mostly across" the center line, he looked a third time, saw Jungbluth's car still 100 feet away, and then "looked straight ahead and kept right on driving" until he was hit three or four feet north of the intersection. On this testimony the jury may have concluded that Henschel was negligent in "looking straight ahead" when a car was rapidly approaching even 100 feet away, and that ordinary care required him to keep an eye on the oncoming vehicle; but that his failure to do so was not causal because the accident would have happened anyway had he continued to watch Jungbluth, since the latter came on very fast, out of control, and swerved to the north so that Henschel could hardly have avoided him had he been gazing steadily to the east while moving the 15 or 20 feet between the place of his last look

and that of the collision. It is to be noted that if Jungbluth had stayed on the concrete the collision would not have occurred, since there was evidence from which the jury could believe that the Henschel car was three or four feet north of the intersection when struck.

On the facts of the present case, it is hard to escape the conclusion that the findings of the jury that Henschel was negligent with respect to both lookout and management and control were duplicitous. If Henschel failed to see the Jungbluth car, or failed to make a proper calculation of the time it would take Jungbluth to reach the intersection (*Plog v. Zolper*, 1 Wis. (2d) 517, 527, 85 N. W. (2d) 492), then Henschel was negligent with respect to lookout, but hardly with respect to management and control, for there was no evidence of anything wrong with his management except that he entered the intersection and proceeded across it in a manner which would have been entirely free from criticism had not Jungbluth been rapidly approaching from the right; and there is no evidence that Henschel's car was out of control at any time. It was only if Henschel saw Jungbluth's car and realized that it was likely to reach the intersection before he could clear it (a proper lookout), that Henschel could have been guilty of negligence in management and control, by moving as he did across the intersection; yet his testimony is undisputed that he saw the car, but thought he had plenty of time to get across the street ahead of it.

While the jury found Henschel negligent in both particulars, we think the foregoing considerations are probably reflected in the finding that only the negligence with respect to management and control was causal; and the latter finding compensated for any prejudicial duplication in the findings of negligence. The jury apparently considered that Henschel saw enough in his earlier observations so that he should have speeded up or slowed down to avoid a collision, and that hence it was his failure to do so, rather than deficiencies in

his lookout, which contributed to cause the accident. While as jurymen we might have thought otherwise, we are unable to say that such finding was without foundation in the evidence. Hence the trial court properly refused to change the answer to the causation question.

*By the Court.*—Judgment and order affirmed.

FAIRCHILD, J., took no part.

STEINLE, J. (*dissenting*). I must respectfully dissent on the ground that Henschel's negligence as to lookout must be held causal as a matter of law.

As was recently pointed out in our decision in *Plog v. Zolper* (1957), 1 Wis. (2d) 517, at page 525, 85 N. W. (2d) 492, an operator of a motor vehicle may be guilty of negligence with respect to lookout, if, seeing an approaching vehicle, his observation is so defective as to miscalculate the speed thereof. If the found negligence on the part of Henschel as to lookout was based by the jury on the conclusion that Henschel did not see the Jungbluth car coming from the east as soon as he should have, then it follows that such negligence was a substantial factor in producing the accident, and causal as a matter of law. On the other hand, as suggested by the majority opinion, if Henschel did sight the approaching Jungbluth car to the east at a point where an ordinarily prudent driver would have seen the same, then such found negligence as to lookout must have consisted in his miscalculation of the speed at which it was approaching. Henschel's mistaken effort to cross the intersection in front of the approaching Jungbluth car based on such miscalculation could not help but be a substantial factor in causing the accident.

The failure of the jury to find that Henschel's negligent lookout was causal necessarily affected its answer to the

comparative-negligence question, which error can only be corrected by a new trial.

I am authorized to state that Mr. Justice CURRIE concurs in this dissenting opinion.