Elsie McDONNELL, Guardian of the Estate of Ronald McDonnell, and Elsie McDonnell, Individually, Appellants,

v.

Jeanette TIMMERMAN, Appellee.

No. 16080.

United States Court of Appeals
Eighth Circuit.

Aug. 10, 1959.

F. H. Becker, Dubuque, Iowa, for appellants.

E. Marshall Thomas, Dubuque, Iowa (O'Connor, Thomas, McDermott and

Wright, Dubuque, Iowa, Walter J. Cole, and Karrmann and Cole, Platteville, Wis., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

█ Plaintiffs, appellants, brought this action to recover money damages for personal injuries and other loss arising out of a collision between a motorcycle operated by Ronald McDonnell and an automobile operated by Jeanette Timmerman, defendant-appellee. The accident occurred on October 27, 1956, at a highway intersection in Grant County, Wisconsin. Suit was originally instituted in the District Court of Dubuque County, Iowa, from which it was removed to the United States District Court for the Northern District of Iowa. As the accident occurred in Wisconsin, we are governed by the substantive law of that state. The parties will be designated as they were in the trial court.

The plaintiff, Ronald McDonnell, then age 17, was operating a motorcycle in an easterly direction on Highway 11. He had one passenger sitting behind him. Highway 11 is a state trunk arterial highway. At the place of the accident, it intersects with county trunk Z, which is an inferior highway and on which are located stop signs governing the approach to arterial Highway 11. The defendant, Jeanette Timmerman, then age 18, was driving a 1956 Hudson automobile in a northerly direction on county trunk Z. She was accompanied by two passengers in the front seat. The time was approximately 9:00 p. m. It was dark and both vehicles had their headlights on. The visibility was good, the weather clear and the pavement dry. Defendant testified she was driving approximately 40 miles per hour and as she approached the intersection she slowed down. Before she came to the intersection, she looked to the west, the direction from which the plaintiff was coming, but saw no traffic. Testimony was given that vehicles approaching the intersection from the west and south

would be visible to one another for a distance of approximately one mile. Defendant stopped for the stop sign at a point about 15 feet from the south edge of Highway 11, looked to the right and then to the left. To her left she noticed a distant dim light. It appeared to be stationary at between one-half mile and one mile away. After she had stopped, she looked again to the right and then proceeded toward the intersection. When the front wheels of her car were approximately on the center of the Highway 11 pavement, she looked again to the left. She then saw a bright light and realized it was a motorcycle momentarily before it struck her vehicle. Defendant believed her average speed, from the time she started up at the edge of the pavement to the time of impact, to have been about five miles per hour.

Ronald McDonnell testified that, accompanied by Robert Parr, he was driving east on Highway 11 at a speed of about 50 or 55 miles per hour. When approximately one-quarter of a mile from the intersection, he noticed the Timmerman car at an equal distance from the intersection traveling on county trunk Z. He testified:

"The next thing I remember was hitting—well, the next thing I remember is applying both brakes as hard as I could, then I remember waking up in the hospital. * * * As to the interval of time between the time I saw the Timmerman car or a car over on County Trunk Z. and the time I hit the brakes, well, there might have been a time there within 100 feet—within the intersection and there could have been more time, which I don't remember. I don't remember anything within the 100 feet of the intersection. As far as I can remember it was on Wednesday noon when I came to in the hospital. The accident happened on a Saturday night."

Robert Parr, who was riding with the plaintiff, received a brain concussion and had no recollection as to how the accident occurred. The two occupants of the de-

fendant's car gave negligible testimony. Neither saw the plaintiff's motorcycle prior to the collision.

One Karl Burroughs was an independent eye-witness to the accident. He operated a grocery store located on the northeast corner of the intersection. He was standing in the doorway of his store and saw both vehicles approach the intersection and saw the collision itself. He first noticed the defendant's car coming from the south when it was approximately one-half mile from the intersection. It appeared to be traveling at a normal speed, came to the stop sign and stopped. As it started forward after stopping he heard the motorcycle and glanced to the west, from which direction it was coming. At this moment the motorcycle was approximately 600 feet from the intersection (he paced off the distance after the accident). Burroughs glanced at the motorcycle again just before the accident when it was roughly 200 feet from the point of collision, at which time he noticed nothing unusual about it. Its lights were on and he heard the motorcycle backfiring. He testified its lights were bright, "compared for a motorcycle". The car at the stop sign also had its lights on. When the motorcycle was about 200 feet from the intersection, Burroughs estimated its speed at about 45 miles per hour. When he first saw the motorcycle at a distance of about 600 feet away, he testified " * * * it was moving rather fast," and that its speed might have been slightly more or less than 55 miles per hour, which is the maximum allowable speed for night-time driving in Wisconsin. Wisconsin Statutes, sec. 85.40(1)(g).

The motorcycle was driven into the left side of the car, which was in the middle of Highway 11 at the time of impact. McDonnell was hospitalized for 20 days following the accident. He sustained a fracture of his left wrist, a 9-inch cut over his right kneecap and chip fractures of the right knee. He was unable to work for a period of five months. He has a permanent malposition of his left wrist and a probable permanent loss of grip-

ping power in his left hand. The possibility of complete recovery from the injury to his right knee is uncertain, but appears likely.

By affirmative pleadings, each party charged the other with negligence in the operation of their vehicles. The Wisconsin law of comparative negligence is applicable. Wisc.Statutes, sec. 331.045. The case was submitted to a jury on a special verdict. The jury found each operator guilty of causal negligence with the percentage of each as follows: Jeanette Timmerman, driver of the car, 55%; Ronald McDonnell, operator of the motorcycle, 45%. The jury found that $3,320.00 would reasonably compensate McDonnell for his injuries and that $1,000.00 would reasonably compensate Elsie McDonnell, his mother, for loss of his services. The medical expenses were agreed to be $771.05, and the damage to the motorcycle $797.00. Judgment was granted on the basis of the percentages designated by the jury.

Plaintiffs claim that the trial court committed prejudicial errors and that the damages awarded to the plaintiffs were grossly inadequate under the evidence and the applicable law, and ask that the case be remanded for a new trial.

Plaintiffs' first contention is that the court erred in failing to submit to the jury six requested interrogatories inquiring as to defendant's causal negligence in three particulars: (1) lookout; (2) failure to yield the right-of-way; and (3) control of her automobile. The court refused to submit the six interrogatories, instructed the jury as will hereinafter be referred to, and submitted the case to it by means of a special verdict made up of five questions. The first inquired as to whether the defendant was guilty of causal negligence in the manner of operating her automobile, to which the jury answered "Yes." The second question inquired as to whether Ronald McDonnell was guilty of causal negligence in the manner of operating his motorcycle, to which the jury answered "Yes." The third question had to do with the percent of negligence of

each as hereinbefore referred to. The fourth and fifth questions were directed to the amount of damages.

■ On this claim of error we are dealing with procedure and not substantive law. Rule 49(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., gives to the trial court discretion in the use of special verdicts. This discretion is not limited to the decision of whether or not to utilize a special verdict, but extends beyond to the form of the submitted interrogatories once such decision is made. Thus, in Norfolk Southern Ry. Co., v. Davis Frozen Foods, Inc., 4 Cir., 1952, 195 F.2d 662, second appeal 204 F.2d 839, certiorari denied, 346 U.S. 824, 71 S.Ct. 41, 98 L.Ed. 349, the court upheld the use of interrogatories inquiring into, as here, the general causal negligence of each party, stating:

> "The formulation of issues, however, is a matter resting in the sound discretion of the trial judge, * *. The number and form of issues, if they present the case fairly, is a matter resting in the sound discretion of the trial judge. Rule 49(a) of Rules of Civil Procedure, 28 U.S. C.A." 195 F.2d at page 666.

See also, Thorp v. American Aviation and General Insurance Co., 3 Cir., 1954, 212 F.2d 821; DeEugenio v. Allis-Chalmers Mfg. Co., 3 Cir., 1954, 210 F.2d 409; Mourikas v. Vardianos, 4 Cir., 1948, 169 F.2d 53.

■■ It will be observed that plaintiffs' interrogatories inquired as to defendant's (1) failure of lookout; (2) failure to yield the right-of-way; and (3) failure to have her car under control. The instructions to the jury in regard to its consideration of the interrogatories framed by the court covered the first two of these duties but not that of failing to have the car under control. Under the law of Wisconsin, negligence in the management and control of a vehicle does not arise until the operator has, by his lookout, perceived something of potential danger which may be avoided by affirmative action. Reynolds v. Madison Bus Co., 1947, 250 Wis. 294, 305, 306, 26 N.W. 2d 653; Briggs Transfer Co. v. Farmers Mutual Auto Ins. Co., 1953, 265 Wis. 369, 61 N.W.2d 305. Thus, in the latter case, the court stated:

> "We have often held that where a driver did not see what was plainly in sight his negligence is one of lookout only and his management and control do not enter the case. Marchant v. Franz, 1951, 259 Wis. 289, 48 N.W.2d 620; Reynolds v. Madison Bus Co., 1947, 250 Wis. 294, 26 N.W.2d 653." 61 N.W.2d at page 307.

In the instant case, the trial court correctly concluded there was insufficient evidence to justify an instruction on defendant's control of her vehicle.

■■ Additionally, an interrogatory containing a question of mixed fact and law may not be submitted to the jury without an accompanying instruction explaining the legal standards which they are to apply. Rule 49(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; Feldman v. Connecticut Mut. Life Inc. Co., 8 Cir., 1944, 142 F.2d 628; Jackson v. King, 5 Cir., 1955, 223 F.2d 714. Plaintiff failed to make any objection to the omission from the court's instructions of matter regarding defendant's duty of control and management. This being the case, error therein cannot for the first time be urged in this court. Rule 51, Federal Rules of Civil Procedure, 28 U.S. C.A.; Carver v. Tanner, 8 Cir., 1956, 252 F.2d 26; Chicago, Great Western Railway Co. v. Casura, 8 Cir., 1956, 234 F.2d 441; Arrow Aviation, Inc. v. Moore, 8 Cir., 1959, 266 F.2d 488, 495.

■ Plaintiffs' second allegation of error is that Ronald McDonnell had an absolute right-of-way so that the trial court erroneously failed to withdraw the issue of his negligence from the jury. Plaintiffs rely mainly on Plog v. Zolper, 1957, 1 Wis.2d 517, 85 N.W.2d 492. Therein, the Wisconsin Supreme Court stated, 85 N.W.2d at pages 498, 499:

> "Sec. 85.18(4), Stats. 1955, prescribes that one operating a vehicle

on a non-arterial highway shall stop when arriving at an arterial highway, and before entering the arterial highway shall 'yield the right of way to other vehicles which have entered or are approaching the intersection upon the artery for through traffic.' Under this language it seems clear that one operating a vehicle on an arterial highway, when entering or approaching an intersection, has an absolute right of way over an operator of a vehicle on a non-arterial highway who is obliged to stop, observe and calculate before entering the arterial highway."

Prior to its removal by an amendment of August 9, 1955, the above noted section contained the additional provision that:

"The driver of any vehicle driving at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder."

The court here instructed the jury that it was the duty of the plaintiff to observe the provisions of the statutes with reference to speed and lookout. Plaintiffs contend:

"If there were any facts and circumstances in this case which showed or tended to show that the plaintiff had an opportunity to observe defendant disobeying the law and a subsequent opportunity to avoid the accident, a proper instruction on such an issue could be framed. This is, of course, in essence, the last clear chance doctrine. It is the contention of the plaintiff that in the absence of the last clear chance doctrine, the Wisconsin Court has said that the arterial driver has the *absolute right of way*. The trial court was so advised by plaintiff but answered that this would constitute 'open season' (R. 91). This is not true. This contention simply recognizes the realities of modern traffic, particularly on the open highway where, as the Wisconsin Court has said, a person entering the arterial highway must not only observe but calculate the speed of any oncoming vehicle before entering the arterial highway."

The more recent case of Wiley v. Fidelity & Casualty Co. of N. Y., 1958, 3 Wis.2d 320, 88 N.W.2d 366, shows the error of plaintiffs' contention. Therein, the plaintiff was proceeding on an arterial highway and struck the defendant's vehicle which entered the highway without stopping as required by signs at that intersection. The jury exonerated the plaintiff in respect to his speed and lookout. The Supreme Court affirmed the action of the trial court in granting a new trial on these issues, stating, 88 N.W.2d at page 369:

"The plaintiff attempts to place too much reliance on his right to assume that no one would invade his lane of traffic where he had the right of way because he was on an arterial highway. A driver cannot rely entirely upon such an assumption. In Bailey v. Zwirowski, 268 Wis. 208, 212, 67 N.W.2d 262, 264, we said:

" 'Plaintiff urges that the trial court disregarded the rule which entitled him to assume that defendant would stop and yield him the right of way. In one of the cases cited by plaintiff is contained a statement of the limitation upon that rule. There the court said that one having the right of way and using ordinary care might rightfully rely on the assumption that his right of way will be respected. The court adds, however, that "this does not excuse the driver with the right of way from maintaining a proper lookout or from using ordinary care in the operation of his car, * * *." Gibson v. Streeter, 241 Wis. 600, 602, 6 N.W.2d 662, 663.' " 88 N.W.2d at page 369.

Plaintiffs point out that the amendment to section 85.18(4) in respect to non-forfeiture of the right-of-way for excessive speed became effective only some 40 days prior to the collision involved in the Wiley case and thereupon argue that, inasmuch as that court failed to quote the amended statute, it was not

considered and that the case, therefore, is not authority contrary to the statements in Plog.

The Wiley case was decided in 1958, approximately three years after the statutory amendment. We refuse to indulge in the presumption that the Wisconsin court was unaware of the amendment.

Lewis v. Leiterman, 1958, 4 Wis.2d 592, 91 N.W.2d 89, involved a collision occurring on August 28, 1955, subsequent to the above amendment of the statute. Therein, suits were brought by passengers in a car traveling on an inferior highway which collided with a car driven on an arterial highway against the drivers of both cars. The court stated:

"The jury found that Leiterman came into the arterial, into Wallenfang's path, without proper lookout and without stopping. Nevertheless, it determined that Wallenfang [who was driving on the arterial highway] was causally negligent in speed and in management and control. The learned trial court, on motions after verdict, said that those findings had ample support in the evidence. Our study of the record brings us to the same conclusion. A finding, which could be made a matter of law, that Leiterman failed to yield the right of way and it was causal negligence could, at most, only add another element to Leiterman's negligence. It might well affect the comparison of negligence between the two drivers. It could not possibly eliminate all causal negligence on Wallenfang's part, nor could it possibly impose any contributory negligence on the plaintiffs." 91 N.W.2d at page 93.

Very clearly, the Wisconsin court was sustaining a finding of negligence on the part of the driver who was on the arterial highway and possessed the statutory right-of-way under the amended statute.

Similarly, in Whyte v. Lindblom, 1934, 216 Wis. 21, 255 N.W. 265, 266, rehearing denied, 216 Wis. 27, 256 N.W. 244, the court declared the general principle that:

"One entering an intersection, although having the advantage of the right of way, is not relieved of the duty of maintaining a proper lookout, * * *."

Finally, in Tomchek v. Mutual Automobile Ins. Co., 1959, 6 Wis.2d 577, 95 N.W. 2d 220, the issue of defendant's speed and lookout was submitted to the jury despite the fact that he had been proceeding on an arterial highway prior to his collision with a vehicle from a non-arterial road.

█ We find the trial court was eminently correct in submitting the issue of plaintiff's negligence for the jury's determination.

█ Plaintiffs next contend that the trial court erred in failing to find the defendant, Jeanette Timmerman, guilty of negligence as a matter of law, with particular reliance on her alleged failure to keep a proper lookout and to yield the right-of-way. Plaintiffs here, too, rely on Plog v. Zolper, supra, and Lewis v. Leiterman, supra. Counsel for plaintiffs attempts in his brief to quote from Plog to the effect that the propriety of defendant's lookout and speed was for the court to determine. In fact, the cited quotation does not appear in Plog as original with that court, but is indicated there to be taken from the earlier decision in Heinecke v. Hardware Mutual Casualty Co., 1953, 264 Wis. 89, 58 N.W.2d 442. Moreover, counsel fails to indicate that the quotation, as used by Plog, concluded with respect to lookout and speed:

*"Both questions are to be determined by the jury."* (Emphasis supplied.) [85 N.W.2d 498.]

A casual reading of Plog and Heinecke makes clear that both are direct authority against plaintiffs' contention. Thus, in Plog the court stated:

"While in the case at bar the court submitted for the jury's consideration the question of the plaintiff's failure to have made a proper observation, the question as to plaintiff's

negligence with reference to calculation was conditioned upon a previous finding that a proper observation had not been made. *We think, as indicated in Heinecke v. Hardware Mut. Casualty Co., supra, that both such matters ought to be determined by the jury.* (Emphasis supplied.)

\* \* \* \* \* \*

"Notwithstanding any inference in Carlson v. Strasser, supra [239 Wis. 531, 2 N.W.2d 233], to the contrary, we are of the opinion that in situations under sec. 85.18(4), Stats. 1955 and sec. 85.18(9), Stats., questions as to both failure to exercise a proper lookout and failure to yield the right of way are to be submitted to the jury. The determinations with respect thereto are proper items to be considered by the jury in the comparing of the negligence of the parties." 85 N.W.2d at page 498.

The court found, however, that:

" \* \* \* it is not necessary that we determine defendant's contention that under the circumstances presented in this case, the plaintiff [who was the stop sign driver on an inferior highway crossing an arterial highway] was negligent as a matter of law in failing to yield the right of way." 85 N.W.2d at page 499.

In Heinecke, defendant collided with the plaintiff after entering an arterial highway from a private driveway, thus giving plaintiff an absolute statutory right-of-way. Wisconsin Statutes, sec. 85.18(9). Plaintiff there contended:

" \* \* \* that this statute must be literally applied. Such interpretation, of course, would compel a finding that Anderson (defendant) was negligent as a matter of law in failure to yield the right of way." 58 N.W.2d 443.

The Supreme Court overruled the lower court's decision for the plaintiff on this point and stated:

"If applied literally, the above statute would lead to absurd results. No driver could enter a public highway from a private driveway if another car was approaching. \* \* \*

"Applied to this case, before entering upon the highway it was Anderson's duty to make a proper lookout. It was his duty by such lookout to look a sufficient distance to ascertain that anyone approaching upon the highway at a lawful rate of speed would not interfere with his entering upon and reaching his proper position upon the highway. If he did not look a sufficient distance or if he did not see a vehicle approaching within that distance, then he failed to make a proper or efficient lookout. Having made his observation, he then had to exercise reasonable judgment in calculating the time it would take him to enter and reach his proper position on the highway. If he did not make a reasonable calculation, then he was negligent. Both questions are to be determined by the jury." 58 N.W.2d 444.

Counsel for plaintiffs also contends that Lewis v. Leiterman, supra, is support for his claim that, under circumstances similar to those with which we are here concerned, the "stop sign driver should be held guilty of negligence as a matter of law". That portion of the opinion apparently relied on by plaintiffs' counsel referred to backseat passengers. The court stated:

"But passengers and especially backseat passengers have a lesser duty. Just where their lesser duty excuses them from giving timely warning of what their lesser duty requires them to see cannot be exactly stated. *It depends on circumstances and is usually a jury question.* But here, considering the cornfield, the failure of the driver to stop and the rate of speed at which the cars approached the point of collision we agree with the able and experienced trial judge that the evidence did not create a jury question and a finding of contributory

causal negligence could not be permitted to stand." 91 N.W.2d at page 92.

Later on, with reference to the driver's negligence, the court stated:

"In Plog v. Zolper, 1957, 1 Wis.2d 517, 85 N.W.2d 492, 498, decided since the instant case was tried, we said that 'in situations under sec. 85.18(4), Stats.1955, and sec. 85.18 (9), Stats., *questions as to both failure to exercise a proper lookout and failure to yield the right of way are to be submitted to the jury.* The determinations with respect thereto are proper items to be considered by the jury in the comparing of the negligence of the parties.'" (Emphasis supplied.) 91 N.W.2d at page 92.

The case is direct support for the trial court's submission to the jury of the question of defendant's negligence here, albeit she was on an inferior highway and duty bound to stop and yield the right-of-way. There was no error on the part of the trial court in refusing to find as a matter of law that the defendant was guilty of negligence.

■ Plaintiffs further contend that the trial court erred in giving its instruction No. 5, wherein the court treated the statutory duties of the plaintiff by direct quotation and the statutory duties of the defendant by rephrasing the statute. The result, according to plaintiffs, was an unbalanced statement of the case to the jury. We have examined the instruction complained of and find no justification for this criticism. The fact that the court quoted one statute in full and paraphrased the other is no grounds for complaint if the instruction substantially apprised the jury of the meaning of the statutes, so that their effect was in nowise lost. Mounds Park Hospital v. Von Eye, 8 Cir., 1957, 245 F.2d 757; Brooks v. Jack's Cookies Company, 4 Cir., 1956, 238 F.2d 109. In that regard we find the complete instruction adequate and fair.

■ Plaintiffs also complain that the court erred in failing to sustain plaintiffs' objection to cross examination of plaintiffs' witnesses, which cross examination revealed the manner in which the plaintiff Ronald McDonnell was dressed. Over objection, defendant's counsel was able to bring out before the jury a description of the clothes worn by McDonnell at the time of the accident. It was testified by one witness that he was wearing a black leather jacket, black trousers and white gloves. (McDonnell himself says that he was wearing levis or bluejeans.) The color and type of clothing worn by McDonnell at the time of the accident may have had some relevancy in connection with visibility. The matter was discretionary and the trial court was in the best position to determine how far cross examination should go in that respect. Railway Express Agency v. Epperson, 8 Cir., 1952, 240 F.2d 189; Kroger Grocery & Baking Co. v. Stewart, 8 Cir., 1947, 164 F.2d 841. When the questioning turned to the style of McDonnell's haircut, the court halted the inquiry. We find no error.

■ Plaintiff's last claim of error is that the decision should be reversed and a new trial granted because the damages awarded to plaintiffs were grossly inadequate. What Chief Judge Gardner of this court said in the very recent case of Myra Foundation v. United States, 8 Cir., 1959, 267 F.2d 612, 614, fully answers plaintiffs' contention:

"We have consistently held that the remedy for excessive or inadequate verdicts is by motion for new trial and that the ruling of the trial court on such motion will not be reviewed by this Court. Agnew v. Cox, 8 Cir., 254 F.2d 263; Zimmerman v. Mathews Trucking Corp., 8 Cir., 203 F.2d 864. The Seventh Amendment of the Constitution of the United States provides, among other things, that:

"'* * * no fact tried by a jury, shall be otherwise re-examined in any Court in the United States, than according to the rules of the common law.'

"At common law, at the time of the adoption of this Amendment, the only method of reviewing facts tried by a jury was a motion for new trial presented to the trial court. Agnew v. Cox, supra. In Zimmerman v. Mathews Trucking Corp., supra, it is said, inter alia:

" 'This Court has consistently adhered to the proposition that the responsibility for keeping jury awards within reasonable bounds is essentially that of the trial courts and not of this Court.' "

Affirmed.