GLEASON and another, Respondents, v. GILLIHAN and another, Appellants.

*September 6—October 4, 1966.*

■■■■■■■■■■■■■■■■■■■■■■■■■■

For the appellants there was a brief by *Whaley &
Whaley* of Racine, and oral argument by *John V. Whaley*.

For the respondents there was a brief by *Phillips &
Richards* of Kenosha, and oral argument by *David L.
Phillips*.

WILKIE, J. The two issues raised on this appeal are
as follows:

1. Was the plaintiff negligent as to lookout as a mat-
ter of law?

2. Were the damages of $11,000 for plaintiff's in-
juries excessive?

### *Negligence as to Lookout.*

The duty of lookout has two aspects. Proper lookout
at intersections requires a duty of observation and a
corollary requirement of making an accurate estimate
of the approaching vehicle's distance and speed.[1] That is,
the entering driver has a duty not only to look, but also
to exercise reasonable judgment in calculating on the
time and opportunity for entering.[2] This dual aspect of
the duty of lookout has been summed up in the require-
ment of efficient lookout.[3]

"[F]ailure to properly evaluate what is seen is as much
an element of lookout as not seeing the approaching ve-
hicle at all."[4]

[1] *Hardware Dealers Mut. Fire Ins. Co. v. Home Mut. Ins. Co.*
(1964), 24 Wis. (2d) 381, 385, 129 N. W. (2d) 214.

[2] *Carlson v. Strasser* (1942), 239 Wis. 531, 536, 2 N. W. (2d)
233.

[3] *Bailey v. Zwirowski* (1954), 268 Wis. 208, 67 N. W. (2d) 262;
*Plog v. Zolper* (1957), 1 Wis. (2d) 517, 85 N. W. (2d) 492.

[4] *Plog v. Zolper, supra,* footnote 3, at page 527.

Defendant appellant argues that plaintiff should be found negligent as to lookout as a matter of law. Plaintiff testified that as she was entering the intersection she looked to the south, saw the defendant approaching, but failed to appraise his speed. Defendant argues that plaintiff breached the duty of lookout because she failed to make an estimate of the defendant's speed and the future position of each automobile. Therefore, it is asserted, plaintiff was negligent as to lookout as a matter of law for not making an efficient observation.

While it is true that plaintiff did not make an estimate of the speed of the defendant at the time she entered the intersection, this does not necessarily mean the plaintiff's lookout was inefficient. She must have made some estimate of the future position of the automobiles without precisely calculating the defendant's speed for she determined that she could safely proceed into the intersection. An approximation of speed is only a factor in reaching this end result.

Furthermore, there is no showing that the plaintiff's calculation was unreasonable. After first determining that she could cross the intersection in safety, plaintiff proceeded into the intersection. Halfway across, plaintiff observed defendant bearing down on her about 50 feet away, traveling at a speed of 40 to 50 miles an hour. Plaintiff then hit her brakes and her car was struck on the right rear as she was leaving the intersection. Had plaintiff not touched her brakes, she would have been through the intersection before defendant and no collision would have occurred. Hence her initial calculation that she could proceed safely across the intersection was not unreasonable, but she was negligent in stepping on the brake. The jury findings bear this out.

A further reason for denying defendant's contention that plaintiff was guilty of negligent lookout, as a matter of law, is that such determination, if held causal, would overlap the jury's finding that plaintiff was guilty of

negligent management and control. Such a holding would penalize her twice for essentially the same conduct.

The instant case is much like *Henschel v. Rural Mut. Casualty Ins. Co.*,[5] where the plaintiff's car was hit in the right rear just as he was leaving the intersection. The jury found causal negligence as to management and control and also found negligent lookout, but held it was not causal. The court held that:

". . . If Henschel failed to see the Jungbluth car, or failed to make a proper calculation of the time it would take Jungbluth to reach the intersection . . . , then Henschel was negligent with respect to lookout, but hardly with respect to management and control, for there was no evidence of anything wrong with his management except that he entered the intersection and proceeded across it . . . . It was only if Henschel saw Jungbluth's car and realized that it was likely to reach the intersection before he could clear it (a proper lookout), that Henschel could have been guilty of negligence in management and control, by moving as he did across the intersection; . . ."[6]

A finding of negligent lookout as a matter of law in the instant case would appear to overlap the jury's finding of negligent management and control because the calculation element of efficient lookout was subsequently eliminated by the plaintiff's negligent braking once in the intersection.

Overall, the jury appears to have fairly apportioned the negligence of the two parties based upon their view of the aggregate conduct of the two parties.

We conclude, therefore, that the determination of whether Mrs. Gleason was guilty of negligent lookout was for the jury and that the apportionment of negligence between Mrs. Gleason and Gillihan was also for the jury.

[5] (1958), 3 Wis. (2d) 34, 87 N. W. (2d) 800.
[6] Id. at page 38.

## Excessiveness of Damages.

As to the jury award of $11,000 for Mrs. Gleason's personal injuries, the trial court said: "That it is high from the viewpoint of this trial judge is unquestionable." We agree. But the trial court did not find the award excessive. Neither do we.

Several times in recent months we have detailed the rules for the trial court to follow in reviewing a damage verdict challenged as excessive. The trial court correctly referred to the rules as set forth in the recent case of *Moritz v. Allied American Mut. Fire Ins. Co.*[7] No purpose would be served by reiterating those rules here. The experienced and able trial judge reviewed the record in accordance with those rules and carefully summarized the evidence supporting the award. He specified the fractures and other injuries and said:

". . . The worst injury was the compression fracture because it is common knowledge that such fractures wherein the normal height of the vertebrae and its cushion is partially lost causes future problems by way of pain. Having in mind that Mrs. Gleason has a life expectancy of approximately 37 years and that she will apparently suffer periodic pain the Court finds itself in the position of being in doubt as to whether it is fair to characterize the verdict as excessive."

He concluded:

". . . there is such a doubt in the Court's mind that it believes its duty is clear. The Court must sustain the verdict recognizing that principle of law that 'the amount to be awarded rests largely in the discretion of the jury and with their verdict the Courts are reluctant to interfere.' *(Moritz case, supra, page 22.)*"

Thus, we are confronted with an allegation that a verdict is excessive notwithstanding approval of that verdict by the trial court.

---

[7] (1965), 27 Wis. (2d) 13, 133 N. W. (2d) 235.

"A damage verdict which has been approved by the trial court will not be disturbed if 'there exists a reasonable basis for the trial court's determination after resolving any direct conflicts in the testimony in favor of plaintiff.'" [8]

In deciding whether there is a reasonable basis for the trial court's determination we are aided by its own analysis of the evidence and appraisal of the award. This is not a case where the verdict includes a sum for an element of damages that has not been proven, as was the case with several verdicts which, since *Powers*,[9] we held to be excessive.[10] The question here is whether the verdict, containing no sum for an element of damages that was not proven, is supported by the evidence.[11] Or to put it another way: Is the amount of the award within "the range of reasonable damages which could be awarded

[8] *Kablitz v. Hoeft* (1964), 25 Wis. (2d) 518, 525, 131 N. W. (2d) 346.

[9] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393.

[10] *Freuen v. Brenner* (1962), 16 Wis. (2d) 445, 114 N. W. (2d) 782, no loss of hearing proven, reduce verdict from $40,000 to $30,000; *Spleas v. Milwaukee & Suburban Transport Corp.* (1963), 21 Wis. (2d) 635, 124 N. W. (2d) 593, no proof of future medical expense, reduce verdict $5,000; *Bradford v. Milwaukee & Suburban Transport Co.* (1964), 25 Wis. (2d) 161, 130 N. W. (2d) 282, loss of wages not proven, reduce $2,896; *Casimere v. Herman* (1965), 28 Wis. (2d) 437, 137 N. W. (2d) 73, no proof of loss of future earnings, reduce $574; *Lundquist v. Western Casualty & Surety Co.* (1966), 30 Wis. (2d) 159, 140 N. W. (2d) 241, no proof of loss of future earnings, reduce $4,000.

[11] Verdicts in the following cases were found to be excessive by the supreme court where the evidence did not warrant the damages awarded: *Powers v. Allstate Ins. Co., supra,* footnote 9; *Beijer v. Beijer* (1960), 11 Wis. (2d) 207, 105 N. W. (2d) 348; *Teufel v. Home Indemnity Co.* (1961), 15 Wis. (2d) 67, 111 N. W. (2d) 893; *Albers v. Herman Mut. Ins. Co.* (1962), 17 Wis. (2d) 385, 117 N. W. (2d) 364.

plaintiff"? [12] On the facts of this case, we conclude that the verdict is within that range and therefore is not excessive.

*By the Court.*—Judgment affirmed.

[12] *Boodry v. Byrne* (1964), 22 Wis. (2d) 585, 596, 126 N. W. (2d) 503.