SLATTERY, Respondent, v. LOFY and another, Appellants.

*No. 163. Argued October 30, 1969.—Decided December 2, 1969.*
(Also reported in 172 N. W. 2d 341.)

For the appellants there was a brief by *Douglas, Bailey & Waggoner* of Spooner, and oral argument by *Paul H. Waggoner.*

For the respondent there was a brief by *Doar, Drill & Norman* of New Richmond, and oral argument by *James A. Drill.*

BEILFUSS, J. The issues are:

1. Did the trial court err in directing the verdict in favor of the plaintiff as to liability?

2. Is the jury award of $10,000 for personal injuries excessive?

3. Did the trial court err in permitting inquiry into the nature of defendant Lofy's prior criminal traffic conviction for impeachment purposes?

"A case should be taken from the jury and a verdict directed against a party:

" ' ". . . only when the evidence gives rise to no dispute as to the material issues or only when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion." ' *Anderson v. Joint School Dist.* (1964), 24 Wis. (2d) 580, 583, 129 N. W. (2d) 545, 130 N. W. (2d) 105, citing *Smith v. Pabst* (1940), 233 Wis. 489, 288 N. W. 780, and *Rusch Sentinel-News Co.* (1933), 212 Wis. 530, 533, 250 N. W. 405.

"Also:

" 'A verdict ought to be directed if, taking into consideration all the facts and circumstances as they appear in evidence, there is but one inference or conclusion that can be reached by a reasonable man.' *Milwaukee v. Bichel,* ante, p. 66, 150 N. W. (2d) 419." *Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 698, 699, 151 N. W. 2d 741.[1]

The accident occurred September 10, 1964, a clear day, between 9:15 and 9:30 a. m., on a level stretch of State Trunk Highway 53, just north of the intersection of

---

[1] *Also see* cases cited in *Zillmer v. Miglautsch, supra,* page 699.

State Trunk Highways 53 and 63 and the unincorporated village of Trego in Washburn county. The plaintiff, Daniel Slattery, sixty-two years of age at the time, came out of the driveway to his home on the west side of Highway 53 in his 1948 automobile, turned right and proceeded southerly in his right-hand or west lane. He testified that before entering the highway he stopped at the end of his driveway, looked in both directions for traffic and turned into the southbound lane. His testimony on direct examination as to whether he observed any traffic to the north, his left, was that he could not recall seeing anything coming toward him.

After proceeding some 400 to 500 feet south of the driveway, and attaining a speed that he estimated at between 15 and 18 miles per hour, the plaintiff's car was struck in the rear by a car driven by the defendant, Rolean Lofy.

Miss Lofy, the defendant, testified that just prior to the collision she was proceeding southerly on Highway 53 at about 75 miles per hour. She was going to work in Spooner and was about one hour late in leaving for work that morning. Some distance before the point of impact, at least a mile, she had passed a green panel truck but observed no other traffic on the highway. She stated that she did not see the plaintiff's vehicle until she was approximately 300 feet from it. She further testified that her best estimate of the elapsed time between first seeing the plaintiff and the collision was about one-half minute to a minute; and that once she perceived the plaintiff's vehicle and the difference in their relative speeds she attempted to apply her brakes but was unable to stop before colliding. It further appears that the left lane of the highway was free of oncoming traffic as she approached the plaintiff.

The maximum speed limit at the place of the accident was 65 miles per hour, with a change in the limit near

the point of the accident because of the village of Trego. The state patrol officer who investigated the accident, Charles Foley, observed debris that he attributed to the accident 490 feet south of the Slattery driveway. He further testified to a gouge mark in the pavement 418 feet south of the driveway which is where he estimated the point of impact to have been. Mr. Foley indicated that he saw no skid marks on the highway. Plaintiff stated that the force of the collision knocked the front seat out of alignment and bent the steering wheel where he had been gripping it; however, damage to the cars was not extensive.

The defendants-appellants cite *Ogle v. Avina* (1966), 33 Wis. 2d 125, 146 N. W. 2d 422, and cases cited therein,[2] for the rule that a driver before entering an arterial highway must not only exercise a proper lookout but must make a reasonable judgment or calculation as to the time it will take to enter and reach a proper position on the highway.

While the plaintiff's testimony as to lookout is not completely unequivocal, there can be no doubt that the plaintiff had reached a proper place on the highway. He was more than 400 feet south of the point where he had entered the highway when he was struck.

There is the additional testimony that his speed was 15 to 18 miles per hour and that this slow speed was negligence. There was no fixed minimum speed at the place in question (the maximum was 65 miles per hour) but sec. 346.59 (1), Stats., provides:

"No person shall drive a motor vehicle at a speed so slow as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or is necessary to comply with the law."

[2] *Heinecke v. Hardware Mut. Casualty Co.* (1953), 264 Wis. 89, 94, 58 N. W. 2d 442; *Plog v. Zolper* (1957), 1 Wis. 2d 517, 527, 85 N. W. 2d 492; *Bowers v. Treuthardt* (1958), 5 Wis. 2d 271, 275, 92 N. W. 2d 878.

Not only is it undisputed that plaintiff was entering an area where reduced speed was required, but it is also undisputed that the left or passing lane was free of oncoming traffic. Miss Lofy could have simply passed the plaintiff in the left lane without danger and without incident. Under these circumstances the plaintiff's speed could not have been a cause of the accident. We are therefore of the opinion that the trial court properly directed the verdict in favor of the plaintiff as to the liability issue.

The principal contention of the appellants is that the damage award of $10,000 for personal injuries is excessive.

The trial court, pursuant to this court's directive in *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. 2d 13, 133 N. W. 2d 235, filed a memorandum decision on motions after verdict describing the injuries of the plaintiff and the court's reasons for upholding the award.

The facts as to the nature of the plaintiff's injury and disability are as follows:

The force of the impact rendered the plaintiff unconscious for a very short time. He stated that his shoulder struck the back of the front seat and that he was knocked out. Upon reviving he felt groggy, his vision was blurred and he had pain in his upper neck, head and right arm. Defendant Lofy testified that immediately after the accident Mr. Slattery was staggering in the roadway and appeared to be dazed as she helped him out of the traffic area.

The plaintiff was not seen by a doctor on the day of the accident except for a referral to an orthopedic surgeon. Mr. Slattery drove from Trego, in another car the same day as the accident, to Minneapolis General Hospital were his wife was employed. There he consulted with her employer, a physician, who referred him to a Dr. Riley whom he saw the next day.

Dr. Riley examined the plaintiff and diagnosed his condition as a moderately severe sprain of the cervical spine superimposed on rather extensive degenerative arthritis, or as observed at oral argument, a phenomenon commonly known as "whiplash." It was his opinion, as well as that of the physician called by the defendants, that the injury aggravated the degenerative arthritis. Dr. Riley distinguished a sprain as an actual tearing of ligaments as contrasted to a stretching of the ligaments in a strain.

Dr. Riley indicated that the plaintiff complained of stiffness in his neck and pain in his head, neck, and right arm. In addition, he complained of a partial loss of grip in the right hand with evidence of nerve root damage, difficulty in movement of the head, and tenderness to pressure on the right side of the neck. Dr. Riley prescribed an anti-arthritic drug, a pain relief compound, physical therapy in the nature of heat and massage, and a cervical collar to immobilize the neck as much as possible. Mr. Slattery wore the neck brace for five or six months.

Dr. Riley continued to treat the plaintiff for about thirteen or fourteen visits and at the time of trial owned certain fishing lands next door to the plaintiff's residence which gave him further opportunity to observe plaintiff's continuing problems. He further indicated that Mr. Slattery had a continuing weakness in his right arm up to the time of the trial. The doctor stated that it was his opinion all avenues of treatment of plaintiff's condition had been exhausted.

The trial was about three years after the accident. Dr. Riley was of the opinion that plaintiff's condition was permanent in view of the fact that there had been no improvement for the past year-and-a-half. He also stated that he observed objective findings such as muscle spasm, the measurement and comparison of motion limitations over the period of treatment, and loss of grip in the right hand.

Dr. Thomas Kilkenney, who examined the plaintiff at defendants' request, noted certain inconsistencies between his medical findings and the subjective complaints of the plaintiff. The doctor stated that pain and weakness in one arm will usually be evidenced by smaller muscle masses in that arm relative to the opposite one due to muscle shrinking. Measurements made of plaintiff's arms revealed that the right arm was not smaller. He further observed that during a general discussion the plaintiff could turn his head sideways quite well, yet when the doctor specifically inquired about movement he was told that it could not be turned more than about five degrees. The same phenomenon was noted in regard to up-and-down movement of the head. It was Dr. Kilkenney's conclusion that the injury in the accident did cause some aggravation of the degenerative arthritis, but the condition was improved and no great degree of permanent damage had been done.

At the time of the accident the plaintiff was sixty-two years old and at the time of trial he was sixty-five. At age sixty-five his statutory life expectancy was eleven-plus years. Occupationally, plaintiff had been a former ambulance driver in Minneapolis, a job from which he had retired prior to this accident. He stated that he had been working part time as a bartender in Trego prior to the accident and earning about $20 to $25 per week. Subsequent to this accident he said he was unable to fulfill the duties of a bartender, particularly in regard to the heavy lifting often involved. In addition, because of the weakness in his arm and the accompanying loss of grip, Mr. Slattery stated he was no longer able to fish, one of his favorite pastimes. Dr. Riley agreed that he had these limitations and that they were permanent.

It is basic that the jury could and apparently did accept the testimony and opinions of Dr. Riley and rejected those of Dr. Kilkenney.

The trial court pointed out that "his injuries" actually included four separate compensable items—pain and suf-

fering to date of trial, wage loss to date of trial, future pain and suffering, and disability and loss of future earning capacity.

After a completely adequate review of the evidence and a review of legal principles, the trial court was of the opinion that "while the award in this case is rather generous, it is not so large that the court is justified in disturbing it." We agree with the trial court. The award is "generous" but it is within reasonable limits and, therefore, not excessive.

The appellants also contend prejudicial error was committed when plaintiff was permitted to show by the clerk of court and the record of the court that defendant Lofy had pleaded guilty to a complaint charging two criminal offenses. The offenses charged were that on September 10, 1964 (the date of the accident in question), the defendant operated a vehicle without a driver's license and that she operated it too fast for conditions.

Whether the admission of this evidence was prejudicial error is not properly before us. This assignment of error and request for a new trial was not raised in the defendants' motions after verdict. The trial court has not had an opportunity to consider this alleged error in the motion for a new trial. It cannot be raised in this court for the first time as a matter of right. *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 80 N. W. 2d 380. For this reason the court declines to consider it.

*By the Court.*—Judgment affirmed.