GASPORD, Plaintiff, v. HECHT and another, Defendants and Appellants: ANDERSON and others, Defendants and Respondents.

*February 9—March 7, 1961.*

For the appellants there was a brief by *Frank L. Morrow* and *James E. Garvey,* both of Eau Claire, and oral argument by *Mr. Garvey.*

For the respondents there was a brief by *Cameron, Cameron & Shervey* of Rice Lake, and oral argument by *Howard W. Cameron.*

MARTIN, C. J.    At about 3:15 p. m. on March 10, 1957, Dwayne Anderson was driving north on Highway 65, an arterial highway, at 50 miles per hour. When 450 to 500 feet from the intersection of Highway 65 with County Trunk CC he observed the Hecht automobile approaching the intersection on CC from the west but could not estimate its speed. He knew he was on an arterial and that vehicles on CC were required to stop at the intersection. He testified that from 400 feet south of the intersection a snow fence on the west side of the highway and running parallel to it obstructed his vision to the west. He reduced his speed somewhat and when he was 40 to 45 feet from the intersection he again saw the Hecht car about the same distance from the intersection. He realized the other car was not going to stop, he applied his brakes, and the cars collided in the center of the intersection east of the center line of Highway 65.

Hecht testified that he approached the intersection at 40 to 45 miles per hour. When he was about 200 feet from it he looked to the south and a snow fence obstructed his vision to a certain extent; he saw no vehicles on Highway 65. He reduced his speed and when 30 to 40 feet from the intersection a large sign 12 to 14 feet from the west edge of Highway 65 obstructed his view, and after he got past the sign he saw the Anderson car. (A photograph showing the location of the sign at the intersection was introduced in evidence but is not included in the record.) Hecht admitted there was a stop sign for vehicles approaching from the west

but that he made no stop. He testified the stop sign was plainly visible from a distance of 200 or 300 feet from the intersection.

The jury found Hecht was causally negligent as to lookout, failure to stop before entering Highway 65, and failure to yield the right of way. It found Anderson not negligent as to lookout and speed, and attributed 100 per cent to Hecht. It is appellants' first contention that the special verdict was duplicitous as to Hecht's negligence in inquiring as to both failure to stop for the arterial and failure to yield the right of way. Since the jury found no negligence on Anderson we do not reach the question of a duplicitous verdict. If we were to find Dwayne Anderson negligent with respect to lookout as a matter of law, which is appellants' second contention, there would have to be a new trial.

Appellants erroneously state their second question to be, "Was there credible evidence to support a jury finding that Anderson was not negligent as to lookout?" The question should be, "Did Hecht establish as a matter of law that Anderson was negligent as to lookout?" and the answer is "No."

Anderson looked to the west 450 or 500 feet from the intersection and saw the Hecht car; he testified he did not see it again, because of the obstruction of the snow fence, until both cars were 45 to 50 feet from the intersection. At that point Anderson realized Hecht was not stopping. Appellants argue that the evidence showed the snow fence was not an obstruction and since Anderson knew the Hecht car was approaching the intersection his failure to make another observation earlier than 45–50 feet from the intersection constituted negligence as a matter of law. The argument disregards the sign near the intersection and the fact that Anderson was traveling on an arterial highway and was entitled to rely on the assumption that his right of way would be

respected. While that would not excuse him from maintaining a proper lookout, it was for the jury to weigh his conduct, considering his right to assume Hecht would obey the law.

Hecht testified that his speed, before reducing it as he approached the intersection, was between 40 and 45 miles per hour. Thus, the jury could reasonably infer that when Anderson first saw the Hecht car, although he did not estimate its speed, there was nothing about it to indicate that Hecht would not stop. Hecht also testified he reduced his speed to 20–25 miles per hour by the time he reached a distance of 30–40 feet from the intersection. The jury could infer from that that even if Anderson had kept Hecht in his view all during that time, observing his slowing down, he would not have known Hecht was not going to stop any earlier than he actually did.

In *Lawrence v. E. W. Wylie Co.* (1954), 267 Wis. 239, 244, 64 N. W. (2d) 820, we said that "some dignity must be accorded to the use of an arterial highway." We were referring to the provisions of sec. 85.40 (2) (a) and (b) (now sec. 346.57 (2) and (3), Stats.), relating to speed. We said that the user of an arterial, having the right to assume the driver on an intersecting highway will stop and yield the right of way, is not bound to so reduce his speed at each intersection as to be able to stop at any time it becomes apparent that the other driver is not stopping; that such a requirement would defeat the purpose of the arterial.

The question of Anderson's lookout was for the jury. The evidence by no means establishes that he was negligent as a matter of law.

Appellants further contend that the trial court erred in admitting testimony as to Hecht's plea of guilty to failure to yield the right of way, Hecht having already admitted that he did not stop. It is well established that a plea of guilty to a traffic charge is admissible in evidence as an admission

against interest. *Olk v. Marquardt* (1931), 203 Wis. 479, 234 N. W. 723. Appellants' main complaint appears to be that the court permitted some repetition of testimony in that regard which allegedly placed undue emphasis upon the fact in the minds of the jury. If there was any undue emphasis it was occasioned by Hecht's own inconsistent testimony, first, in denying he entered a plea of guilty, and then, after testimony of the justice of the peace before whom he had appeared, in admitting it.

*By the Court.*—Judgment affirmed.