SCHLUETER and another, Appellants, v. GRADY and others, Respondents.

*September 3—October 1, 1963.*

548

For the appellants there were briefs by *Jasper, Winner, Perina & Rouse* of Madison, and oral argument by *Robert I. Perina*.

For the respondents there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll Metzner*.

DIETERICH, J.   The collision between the two automobiles occurred on March 14, 1960, at approximately 1:30 a. m., at the intersection of Woodley lane and the South Beltline Highway (U. S. 12–18) in the city of Madison. At that point the beltline is a four-laned, blacktop-surfaced arterial highway running in a general east-west direction, and is approximately 48 feet wide. There is no median strip and the two eastbound lanes are separated from the two westbound lanes by painted yellow lines. At the time of the collision Woodley lane was a gravel road running north and south, and ending at the beltline. There is a stop sign on Woodley lane, located approximately 25–27 feet from the northern edge of the beltline. The Beltline Highway curves to the north approximately 300–350 feet east of the Woodley lane intersection. Both drivers testified that they were quite familiar with the roads in the area.

On the night in question Mrs. Schlueter was driving a 1956 Chevrolet automobile south on Woodley lane after finishing work at a restaurant located in the immediate area. Defendants Grady and Christy were proceeding west on the beltline in the lane closest to the right-hand shoulder, at a speed of 45–50 miles per hour. The posted speed limit was 50 miles per hour. Grady was driving, although the car, a 1958 Oldsmobile convertible, was owned by the passenger, Christy. The night was clear, the road dry, and the intersection was lighted. There is a sign located on the curve

approximately 270 feet east of the Woodley lane intersection informing westbound beltline traffic of an approaching side road.

Mrs. Schlueter testified that she stopped even with the stop sign on Woodley lane, and looked both ways before proceeding onto the highway. However, her testimony concerning the point at which she first saw the Grady car is extremely conflicting. The record discloses that in a previous case involving a passenger in one of the cars, she testified that she could see 700–900 feet to the east, and that she knew a car was coming before she started up from the stop sign. The nature of her testimony in the instant case can be gleaned from the following excerpts taken from the record:

*Direct examination by Mr. Perina* (counsel for Mrs. Schlueter):

"*Q.* Can you describe, or will you describe, what you did when you came up to the stop sign? . . . *A.* Well, when I got done work, I drove out from the Star Dust and I stopped at the stop sign and looked both ways.

"*Q.* Then what did you do? *A.* When I crossed the highway, I looked quickly both ways, and a far off distance I seen a light.

"*Q.* Then what happened? *A.* Well, in this far off distance there were lights and they came so fast and they hit me like lightning."

*Cross-examination by Mr. Metzner* (counsel for Grady):

"*Q.* How far could you see to your left around the curve? *A.* Well, you could see—what do you mean, how far do you mean, feet or what?

"*Q.* In feet, yes. *A.* Oh, maybe about 200 feet or so.

"*Q.* You could see about 200 feet to the east, is that right? *A.* Yah. . . .

"*Q.* Did you ever see the Grady car at any time before this collision? *A.* Well, I didn't, no, I didn't see no car.

"*Q.* You didn't see the Grady car at any time prior to the impact? *A.* Didn't know whose car it was. I didn't see anything till the impact."

*Re-cross-examination by Mr. Metzner:*

"*Q.* So that at the time you were at the stop sign and looked to your left you did know a car was coming, didn't you? *A.* Yes.

"*Q.* And then you proceeded to pull out onto the highway, is that right? *A.* Well, I was on the highway before I noticed the car. May I correct myself?

"*Q.* Yes. *A.* I did not see a car until I got on the highway.

"*Q.* Where were you when you saw these lights that Mr. Perina asked you about? *A.* Far off distance.

"*Q.* Where were you? *A.* I was in the middle of the highway.

"*Q.* Were you in the middle of the highway when you saw these lights off in the distance? *A.* I seen a glare in the sky.

"*Q.* O. K. Where were you when you saw that? *A.* I was going across the highway. I was way around the bend there and you could see the glare that is past.

"*Q.* Where were you when you saw this? *A.* On the road.

"*Q.* On the Beltline Highway? *A.* Yes, sir, just crossing the highway . . .

"*Q.* So that at the time you were back at the stop sign you didn't see anything? . . . *A.* Do you mean when I started out at the stop sign if I seen anything, is that right, is that your question?

"*Q.* Yeah. *A.* O. K. I seen lights in the far off distance. . . .

"*Q.* And where were you at that time when you saw the lights around the bend? . . . *A.* I was almost across the highway. Is that the answer you want?"

Mrs. Schlueter's testimony was clear, however, as to the fact that she had reached a speed of approximately 15 miles per hour by the time her automobile entered the traveled portion of the highway, and that she did not stop at any time up to the point of impact.

Defendant Grady testified that as he rounded the curve, he first saw the Schlueter car when it was approximately 150 feet away and it was his opinion that it was not moving

at that time. He applied his brakes when he was about 50 feet from Mrs. Schlueter's car. At one point he testified that three or four seconds elapsed between the time he first saw her car and the time he applied the brakes. He stated that he had not slowed down while rounding the curve, and that the Schlueter car was blocking both westbound lanes when he first saw it. Grady left 49 feet of skid marks which veered off to his right. He struck the Schlueter car on its left side at the rear door. The trial court considered the actual point of impact to be irrelevant.

Bertha Schlueter claimed $35,000 for her injuries, and Marvin Schlueter claimed a total of $15,000 for damage to his automobile, his wife's medical expenses, and loss of her services. The complaint charged defendant Grady with negligence as to lookout, management and control, speed, and driving while under the influence of intoxicating liquors. The defendants denied all allegations of causal negligence. As a separate defense on the merits, they alleged that the collision was caused entirely by the negligence of the plaintiff in the following respects: Lookout, management and control, failing to bring her vehicle to a complete stop before entering an arterial highway in violation of sec. 346.46, Stats., failing to yield the right-of-way in violation of sec. 346.18 (3), and failing to make a proper left turn onto the arterial highway in violation of sec. 346.31.

The trial court submitted special verdict questions to the jury covering Bertha Schlueter's negligence as to lookout, management and control, and right-of-way. The questions pertaining to defendant Grady dealt with his negligence as to lookout, speed, and management and control. The jury found Bertha Schlueter causally negligent as to lookout and failing to yield the right-of-way. Grady was found causally negligent as to speed and management and control. The negligence was apportioned 40 percent to Bertha Schlueter and 60 percent to defendant Grady.

In ruling on the motions after verdict, the trial court explained its reasons for granting defendants' motion for directed verdict, which had been taken under advisement at the close of the evidence:

"It seems very clear to this court, under the facts of this case as disclosed by the evidence, that the defendant [plaintiff] was most negligent with respect to lookout in plunging ahead on the arterial highway in the face of the oncoming vehicle approaching from her left. . . .

"Now, this despite the fact that the defendant, as found by the jury, was causally negligent with respect to speed. The jury found the defendant not negligent with respect to lookout. This negligence of the plaintiff with respect to lookout, along with the negligence found by the jury and which naturally followed the negligence with respect to lookout and which was negligence with respect to right of way, were clearly established by the evidence and there is no question but what the jury had no room to find to the contrary. The defendant had a right to assume that the plaintiff would yield the right of way, which she did not do, and notwithstanding he was found negligent with respect to management and control after he observed the situation such negligence could not, together with his negligence as to speed, equal that or at least exceed that of the defendant [plaintiff] with respect to failure to yield the right of way and negligence as to lookout. . . .

"I see no help for it but taking the plaintiff's record at its best her negligence as a matter of law exceeded that of the defendant approaching the intersection on the arterial and that her act of plunging blindly into the arterial in the face of this automobile was the greater act of negligence causing the accident and the injuries of which she complains; . . ."

The test for determining whether a verdict should be directed is whether the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion. *Rusch v. Sentinel-News Co.* (1933), 212 Wis. 530, 250 N. W. 405; *McDonald v. Bituminous Casualty Corp.* (1960), 11 Wis. (2d) 202, 205, 105 N. W.

(2d) 312; *Gilson v. Drees Brothers* (1963), 19 Wis. (2d) 252, 254, 120 N. W. (2d) 63. Another rule pertinent to the instant case is the familiar one which requires a court in weighing a defendant's motion for directed verdict to regard evidence in a light most favorable to the plaintiff. *Rudzinski v. Warner Theatres* (1962), 16 Wis. (2d) 241, 243, 114 N. W. (2d) 466; *Gilson v. Drees Brothers, supra,* page 255.

In the great majority of automobile accident cases the comparison of negligence is for the jury. *Vidakovic v. Campbell* (1956), 274 Wis. 168, 79 N. W. (2d) 806; *Pettit v. Olson* (1960), 11 Wis. (2d) 185, 191, 105 N. W. (2d) 280. While there are a number of cases wherein it has been determined as a matter of law that the negligence of a plaintiff equaled or exceeded that of one or more defendants, the instances in which a court can so rule will be extremely rare. *Kraskey v. Johnson* (1954), 266 Wis. 201, 204, 63 N. W. (2d) 112; *Davis v. Skille* (1961), 12 Wis. (2d) 482, 107 N. W. (2d) 458. In *McGuiggan v. Hiller Brothers* (1932), 209 Wis. 402, 407, 408, 245 N. W. 97, decided shortly after enactment of the comparative-negligence statute, it was stated that the rare instances in which a court can say as a matter of law that the negligence of the plaintiff is equal to or greater than that of the defendant will ordinarily be limited to cases where the negligence of each is of precisely the same kind and character. Subsequently, however, we have held that in certain fact situations in which a plaintiff has been disproportionately negligent, justice requires that his negligence be held to equal or exceed that of the defendant even though the negligence of each is not of the same character. *Davis v. Skille, supra,* pages 489, 490, and cases there cited; *Gilson v. Drees Brothers, supra,* page 255.

This court repeatedly has held that some dignity must be accorded to users of an arterial highway, and that a driver

on an arterial has no duty to anticipate that the user of an intersecting highway will not yield the right-of-way. *Clocherez v. Miller* (1952), 262 Wis. 492, 55 N. W. (2d) 881; *Kraskey v. Johnson, supra; Lawrence v. E. W. Wylie Co.* (1954), 267 Wis. 239, 244, 64 N. W. (2d) 820; *Gaspord v. Hecht* (1961), 13 Wis. (2d) 83, 87, 108 N. W. (2d) 137.

Sec. 346.18 (3), Stats.,[1] requires operators of vehicles stopped for arterial stop signs to yield the right-of-way at an intersection with a through highway. In *Plog v. Zolper* (1957), 1 Wis. (2d) 517, 85 N. W. (2d) 492, we had occasion to interpret this statute (then sec. 85.18 (4)). In that case the plaintiff was traveling in a northerly direction on a nonarterial street in Green Bay. Defendant was proceeding in the westbound lane of an intersecting arterial highway at a speed of 20–25 miles per hour. Plaintiff had stopped at the arterial stop sign, and proceeded into the intersection where he was struck by defendant's vehicle. Plaintiff testified that he looked to the right and to the left and that he did not see anything coming. The jury found both drivers negligent as to lookout and apportioned 75 percent to the defendant and 25 percent to the plaintiff. This court reversed the plaintiff's judgment and dismissed the complaint, holding that his negligence and that of the defendant were equal as a matter of law. In defining the duty arising under the right-of-way statute this court stated as follows (p. 528):

"Sec. 85.18 (4), Stats. 1955, prescribes that one operating a vehicle on a nonarterial highway shall stop when arriving at an arterial highway, and before entering the arterial highway shall 'yield the right of way to other vehicles which have entered or are approaching the intersection upon the

---

[1] "The operator of a vehicle shall stop as required by s. 346.46 before entering a through highway, and shall yield the right of way to other vehicles which have entered or are approaching the intersection upon the through highway."

artery for through traffic.' Under this language it seems clear that one operating a vehicle on an arterial highway, when entering or approaching an intersection, has an absolute right of way over an operator of a vehicle on a nonarterial highway who is obliged to stop, observe, and calculate before entering the arterial highway."

It is a fundamental rule of law that one approaching an arterial highway is obliged to stop, look, and think. A motorist proceeding on an arterial has the right to assume that a driver approaching the arterial on a nonarterial street will not only physically stop his car for the arterial, but he will also not proceed into the intersection without first ascertaining whether he can do so with safety. See *Schmit v. Jansen* (1945), 247 Wis. 648, 20 N. W. (2d) 542; *Kraskey v. Johnson, supra; Magin v. Bemis* (1962), 17 Wis. (2d) 192, 199, 116 N. W. (2d) 129.

Appellants contend that the case of *Henschel v. Rural Mut. Casualty Ins. Co.* (1958), 3 Wis. (2d) 34, 87 N. W. (2d) 800, is controlling in the instant action. In that case the plaintiff was traveling north on a nonarterial street, and defendant was proceeding west on an arterial highway. Plaintiff reached the intersection first and started across while defendant was approaching from the east. Defendant's car collided with the right rear portion of plaintiff's vehicle. The jury found that defendant was causally negligent with respect to speed and management and control, and that plaintiff was negligent as to management and control and failing to stop at an arterial stop sign. The negligence was apportioned 60 percent to the defendant and 40 percent to the plaintiff. Defendant claimed on appeal that plaintiff's negligence was equal to his as a matter of law. This court affirmed the judgment for plaintiff, stating that there was evidence from which the jury could believe that plaintiff slowed at the stop sign, looked, saw defendant some 250–300 feet away, and concluded that he had plenty of time to

get across. The comparison of negligence was held to be for the jury.

In the instant case, Mrs. Schlueter's testimony, while extremely contradictory, indicates that she never saw the defendant until the moment of impact. In the *Henschel Case,* the plaintiff saw defendant's automobile some 250–300 feet away, and concluded that he had plenty of time to get across.

Appellants argue that under *Davis v. Skille, supra,* which was an action against the owner of a farm for injuries suffered by a farm worker, the weighing of evidence is particularly for the jury and not for the court. They quote at length from the *Davis Case* to the effect that a verdict should be directed against a plaintiff only where his evidence, giving it the most-favorable construction it will reasonably bear, is insufficient to sustain a verdict in the plaintiff's favor. It is appellants' contention that the jury in the instant case could have decided that respondent Grady had been drinking prior to the accident; that he was traveling at a very excessive rate of speed; and that he intentionally did nothing to avoid the accident for three or four seconds. First of all, the allegation in the complaint that Grady was intoxicated was specifically denied, and there was no evidence introduced to the effect that he had been drinking, other than Mrs. Schlueter's statement that she smelled liquor in Grady's car after the collision. Grady denied that he had been drinking prior to the accident. Although the jury found Grady negligent as to speed, his testimony that he was driving at a speed of 45–50 miles per hour immediately prior to the collision was never contradicted. It appears from his own testimony that he did nothing for three or four seconds after he first sighted the Schlueter car, and appellants have stressed this throughout. However, since an automobile traveling at a speed of 50 miles per hour covers 73 feet per second, this does not square with Grady's testimony that he first saw Mrs. Schlueter when he was approximately 150 feet away. Ap-

pellants also argue in their reply brief that Grady had at least six or seven seconds to try to avoid the collision. However, Grady's speed of 73 feet per second would then place him more than 430 feet away at the time he must have first noticed the danger. This would be a physical impossibility in view of the fact, as disclosed by the record, that visibility is limited to 300–350 feet due to the curve in the Beltline Highway. Grady had a right to assume that Mrs. Schlueter would yield the right-of-way, which she did not do. The lights of the Grady car should have been visible to Mrs. Schlueter as it came out of the curve some 300–350 feet away, yet she claims she saw nothing until the moment of impact. That Grady applied his brakes when he realized that the Schlueter car was not going to yield is evidenced by the 49 feet of skid marks left by his automobile.

In view of the foregoing, it is clear that, as a matter of law, the negligence of Bertha Schlueter as to lookout and failure to yield the right-of-way equaled or exceeded the negligence of respondent Grady with respect to speed and management and control. It necessarily follows that the judgment of the trial court granting the defendants' motion for a directed verdict be affirmed.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.