PAGEL, Respondent, v. KEES and another, Appellants.

*March 4—April 28, 1964.*

---

[3] Sec. 123.18, Stats.; *Smith v. Howard* (1955), 76 Idaho 235, 280 Pac. (2d) 1060.

For the appellants there were briefs by *Hofmeister & Engler,* and *Benton, Bosser, Fulton, Menn & Nehs,* attorneys, and *Peter S. Nelson* of counsel, all of Appleton, and oral argument by *Mr. David L. Fulton* and *Mr. Nelson.*

For the respondent there was a brief by *Bonk, Lutz & Hertel* of Chilton, and oral argument by *Robert Lutz* and *William Hertel.*

HALLOWS, J.   The first contention made by Kees is the negligence of Pagel as a matter of law was at least equal to his negligence.  Since neither Pagel nor Kees was able to testify as to lookout immediately prior to the collision be-

cause of amnesia, both could be found guilty of causal negligence, but in so finding under an ultimate-fact verdict, the jury could consider them guilty as to either lookout or management and control, but not as to both, and the jury was so instructed. *Winston v. Weiner* (1958), 2 Wis. (2d) 584, 592, 87 N. W. (2d) 292. With an ultimate-fact verdict, it is impossible for a reviewing court to know the particular elements of negligence found by the jury but such a finding is not essential in this case as the specific question is whether the apportionment of the causal negligence is sustained by any reasonable view of the evidence.

Unless Kees was guilty of speed in addition to either lookout or management and control, he had the directional right-of-way and normally would not be charged with greater causal negligence than Pagel. When two drivers approach an intersection under such circumstances that if both continue in the same course and at the same speed a collision will result, it is the obligation of the driver on the left to yield to the driver on the right. Sec. 346.18, Stats. *Nessler v. Nowicki* (1961), 12 Wis. (2d) 421, 107 N. W. (2d) 616; *Vogel v. Vetting* (1953), 265 Wis. 19, 60 N. W. (2d) 399. As to Kees' speed, there was testimony by Fred Harder who was driving north 40–45 m.p.h. on the town road, that after he passed the intersection and was 1,450 feet north thereof, he met the southbound Kees traveling at 55–60 m.p.h. Mrs. Harder, a passenger in her husband's car, testified in effect that after meeting the Kees' car they proceeded approximately 400 feet when she looked back to the intersection and saw a big cloud of dust at the intersection.

It is argued that if Harder were going 40–45 m.p.h. and proceeded 400 feet while Kees traveled some 1,450 feet this testimony is incredible because it makes Kees' speed 114 m.p.h. While another jury may well have disregarded the testimony of the Harders, this jury apparently gave it some weight as to excessive speed and forfeited Kees' right-of-way. We cannot say as a matter of law the jury was wrong. More-

over, the jury could have considered the physical facts after the accident. The position of the cars, their damage, and their location from the intersection may be a basis of an inference of speed. *Rodenkirch v. Johnson* (1960), 9 Wis. (2d) 245, 101 N. W. (2d) 83; *Mackowski v. Milwaukee Automobile Mut. Ins. Co.* (1957), 275 Wis. 545, 82 N. W. (2d) 906; and *Odya v. Quade* (1958), 4 Wis. (2d) 63, 90 N. W. (2d) 96.

Although Kees was approaching from the right, he was approaching an intersection with his view partly obstructed, at least he could not see what was coming from his left because of the woods until he was 125 feet north of the intersection, at which point he could only see a car if it were 106 feet east of the intersection. Under sec. 346.57 (2), Stats., Kees was required to drive at a reasonable and prudent speed, having regard for such potential hazard, and consistent therewith was also required under sub. (3) to drive at an appropriate reduced speed because of approaching the intersection. *Johnson v. Fireman's Fund Indemnity Co.* (1953), 264 Wis. 358, 59 N. W. (2d) 660.

Unlawful speed which will forfeit one's right-of-way must be sufficient to ground a finding of negligence as to speed. When such negligence is found on the part of the right-hand driver, neither he nor the left-hand driver has a right superior to the other in entering the uncontrolled intersection. However, there is no evidence indicating Pagel was speeding and there was some evidence which the jury could believe that Kees was negligent as to speed under the existing conditions.

In determining the relative contribution of causal negligence, the jury could consider Pagel's testimony that Kees stated to him in the hospital, "I see you come by, I got that darn neuralgia, I couldn't get my foot up." It is claimed this testimony should be disregarded because of the mental condition of Pagel. However, the statement was admissible for such weight as the jury chose to give it. Pagel was not incompetent to testify. *State v. Schweider* (1959), 5 Wis.

(2d) 627, 94 N. W. (2d) 154. Moreover, the jury could decide whether Kees, in fact, made such a statement in view of his denial and claimed amnesia.

The defendants argue they are entitled to a new trial on the liability issue because of errors in the admission and exclusion of evidence. They contend the testimony of Fred and Marcella Harder as to Kees' speed when they met him about one-fourth mile north of the intersection and while they were traveling at a speed of 40–45 m.p.h. was wholly incompetent and prejudicial and should not have been admitted in evidence. We do not agree. Where one is able to estimate the rate of speed of an oncoming car even though the witness is moving in the opposite direction, the opinion of speed is admissible. Where, however, the witness is unable to judge the rate of speed because of his position, the shortness of the observation, lack of reference points, or other reasons, his opinion is of no probative value, and it is error to admit such testimony. The mere fact the speed of a car is estimated by a person who is traveling in the opposite direction on a straightaway does not necessarily render the estimate of speed of no probative value.

True, it is most difficult to judge speed of an oncoming car but we cannot say as a matter of law it never can be done to a probative degree. Whether speed under such conditions can be judged to a probative degree is a question to be determined on the facts of each case. In *Fessler v. Northwestern National Casualty Co.* (1953), 265 Wis. 14, 60 N. W. (2d) 387, testimony of speed was not admitted of a witness who was traveling in the opposite direction and had admitted he was in no position to judge speed and could not estimate it. In *Maccaux v. Princl* (1958), 3 Wis. (2d) 44, 87 N. W. (2d) 772, we stated one driver's estimate of another driver's speed when the vehicles are traveling in opposite directions has little probative value but we did not hold such testimony was inadmissible. Where a person was stopped and was able

to make an estimate of speed of an oncoming car, the estimate was admissible. In *Albrecht v. Tradewell* (1955), 271 Wis. 303, 73 N. W. (2d) 408, a pedestrian's estimate of speed of an approaching car was held admissible in evidence, and in *Millay v. Milwaukee Automobile Mutual Ins. Co.* (1963), 19 Wis. (2d) 330, 120 N. W. (2d) 103, we held that an estimate of a driver of a stopped car of the speed of an oncoming car was admissible in evidence.

In *La Vallie v. General Ins. Co.* (1962), 17 Wis. (2d) 522, 117 N. W. (2d) 703, while no attempt was made to give the rate of speed, an observation by the driver of a car of the distance of an automobile behind him going in the same direction was admitted in evidence for the purpose of considering its location in relation to time and place of impact in resolving an issue of speed. We conclude there was no error in admitting the testimony of Fred and Marcella Harder as to speed as they were in such a position to make a sufficient observation in reference to distance and time as to render their estimates of some probative value. See on the problem, Swietlik, Opinion Evidence in Wisconsin—Non-Expert Witness, 3 Wisconsin Continuing Legal Education (Oct. 1963), No. 4, pp. 61, 72.

We find no error in limiting the cross-examination of Mrs. Harder. The defendants sought to show that from the time the Harders first saw the Kees car to the point where they passed the Kees car, both the Harder and Kees vehicles traveled one fourth of a mile. The questions asked were so involved the witness and the trial court had difficulty understanding them. But the important point is the limitation on cross-examination excluded argumentative questions. We find no error in the exclusions.

The third error assigned is the exclusion of an admission of the adjuster for the liability and compensation carrier of the plaintiff's employer. The defendants offered to prove by Kees that the adjuster at the time of settling with him ad-

mitted Kees had the right-of-way and Pagel was supposed to stop. The trial court correctly refused to admit this testimony on the ground the statement of the adjuster was a conclusion of law. In this situation such a statement made by another is not analogous to a plea of guilty to a traffic charge, which is admissible as an admission against interest of the declarer. *Gaspord v. Hecht* (1961), 13 Wis. (2d) 83, 108 N. W. (2d) 137. Under *Rudzinski v. Warner Theatres* (1962), 16 Wis. (2d) 241, 114 N. W. (2d) 466, an agent's statement to be admissible against his principal must have been spoken within the scope of the authority of the agent to speak for the principal. In this case the adjuster for the Mutual Service Casualty Insurance Company, although the liability insurer and the workmen's compensation carrier of Pagel's employer, was not the agent of Pagel, had no authority to bind him by any admissions so as to affect his recovery from Kees.

The last contention of defendants concerns the amount of the judgment. They claim the amount of recovery must be reduced to exclude the share of Mutual Service Casualty Insurance Company as the workmen's compensation insurer of Pagel's employer whose truck he was driving in the course of his employment at the time of the accident. As a result of the injuries suffered by Pagel, Mutual Service paid him over $14,000 up to February 21, 1963, and continued to pay him a weekly sum in addition to medical bills. When, however, Mutual Service Casualty Insurance Company on May 28, 1959, settled Kees' claim against Pagel, the employer, and itself for $2,250, it took from Kees a release discharging itself, the employer, and Pagel without any reservation of rights against Kees. Similarly on June 2d, Mutual Service settled with the Integrity Mutual Insurance Company for $99, its subrogation claim as collision carrier of Kees, without any reservation of rights in the release.

The question now raised is whether the doctrine of *Wm. H. Heinemann Creameries v. Milwaukee Automobile Ins. Co.*[1] should be applied to reduce the amount of the judgment by the share allocable to Mutual Service and to which it would otherwise be entitled under sec. 102.29 (1), Stats. It is true our decisions up to now have only involved the effect of releases on subrogation and contribution claims against the tort-feasor with whom settlement has been made. However, if a claim relating to the subject matter of the release is existing at the time of the settlement and execution of the release, we see no reason why the doctrine of estoppel should not be applied to such a claim.

It is argued the nature of Mutual Service's claim renders the release in this case analogous to the release in *Rensink v. Wallenfang* (1959), 8 Wis. (2d) 206, 99 N. W. (2d) 196, *i.e.,* a widow's claim for wrongful death which arose after the release was executed, or like the release in *Ohio Casualty Ins. Co. v. Nauth, supra,* where the claim for contribution arose after the execution of the release. We do not agree. At the time of settlement with Kees, Mutual Service was obligated to pay Pagel's claim under the Workmen's Compensation Act and had a right to make claim or maintain an action against Kees. At the time the release was taken from Kees, Pagel had a right to bring suit against Kees and Mutual Service had a right to share in any recovery by Pagel from the third-party Kees and not to start a separate action. The fact the Mutual Service's right is grounded upon the Workmen's Compensation Act and is governed by the formula in sec. 102.29 (1), Stats., should not prevent the application of the doctrine of estoppel. We do not consider *Huck*

[1] (1955), 270 Wis. 443, 71 N. W. (2d) 395; see also *Ohio Casualty Ins. Co. v. Nauth* (1958), 5 Wis. (2d) 518, 93 N. W. (2d) 514; *Travelers Indemnity Co. v. Home Mut. Ins. Co.* (1961), 15 Wis. (2d) 137, 111 N. W. (2d) 751; and *Smith v. Rural Mut. Ins. Co.* (1963), 20 Wis. (2d) 592, 123 N. W. (2d) 496.

*v. Chicago, St. P., M. & O. R. Co.* (1961), 14 Wis. (2d) 445, 111 N. W. (2d) 434, applicable.

Under sec. 102.29 (1), Stats., the employee and the compensation carrier are given specific rights and shares in the recovery against a third party. The reasonable costs of collection are first deducted, then one third of the remainder is allocated to the injured employee, and the balance is applied to reimburse the insurance carrier for payments made or obligated. If there is any remainder, it belongs to the employee. In this case Mutual Service's right to reimbursement will exhaust the available funds. Because of the nature of the insurance carrier's right, its recovery may be prevented or affected because of estoppel even though no estoppel is asserted against the employee. This holding requires a modification and reduction of the judgment to an amount which will give Pagel the same amount he would be entitled to if there were no estoppel applied to Mutual Service on the instant facts.

We do not approve of the defendants' method of computing the attorney's fee set forth in their brief. Moreover, at the time of the motions after verdict there was an agreement between counsel that an attorney's fee of one third was reasonable. However, Pagel's attorney points out the case has now proceeded to the supreme court and the State Bar of Wisconsin minimum-fee schedule recommends a 40 percent contingent fee in that event. The trial court should determine the reasonableness of the fee on remand.

*By the Court.*—The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.