DANOW and others, Plaintiffs and Respondents, v. UNITED STATES FIDELITY & GUARANTY COMPANY and another, Defendants and Respondents: STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and another, Defendants and Appellants: TRAVELERS INDEMNITY COMPANY, Plaintiff and Respondent.

SMAGLICK (Paul), Plaintiff and Appellant: SMAGLICK (Suzanne) and others, Plaintiffs and Respondents, v. SAME, Defendants and Respondents: STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Impleaded Defendant and Appellant: DANOW and another, Impleaded Defendants and Respondents.

*November 27—December 22, 1967.*

216

218

For the appellants there was a brief by *Kivett & Kasdorf*, attorneys, and by *Ray T. McCann*, attorney for plaintiff-appellant, and *Harold A. Dall, Nonald J. Lewis, Keith I. Johnston*, and *Leonard L. Loeb* of counsel, all of Milwaukee, and oral argument by *Mr. Lewis* and *Mr. Loeb*.

For the defendants-respondents there was a brief by *Kluwin, Dunphy, Hankin & Hayes* of Milwaukee, and oral argument by *Gerald T. Hayes*.

For the plaintiffs-respondents there was a brief by *Phillips, Hoffman & Phillips*, and for the impleaded defendants-respondents by *Ames, Riordan, Crivello & Sullivan*, all of Milwaukee, and oral argument by *Bertram J. Hoffman*.

HANLEY, J. These three issues are presented by the instant appeal:

(1) Was there any evidence to support the jury finding of negligence with respect to speed on the part of Smaglick; (2) did the trial court err in submitting both

speed and management and control as elements of negligence with respect to Smaglick; (3) did the trial court err in failing to instruct as to the duties of Peterson as to lookout and yielding the right-of-way and the rights of an arterial driver to rely thereon?

*Smaglick's Speed.*

The trial court refused to submit the issue of Smaglick's speed in excess of the posted speed limit to the jury. With respect to Smaglick's speed before the impact, the only testimony to support such a finding is that of Mrs. Danow, who on direct examination testified that Smaglick's speed before the first impact was 60 to 65 miles per hour. She had testified at an examination before trial that his speed was from 65 to 75 miles per hour. Her testimony as to the time when she observed Smaglick's speed is as follows:

"*Q.* And did you see the Smaglick car? *A.* Yes, sir.

"*Q.* Do you know which was the Smaglick car? The one that was going east? *A.* Yes, sir.

"*Q.* Where was the Smaglick car? *A.* He was west, he was west from us in the west, I would say about two, three blocks from the intersection, not from us, I mean from the intersection I am talking about.

"*Q.* You mean about three blocks west of the intersection? *A.* Yes, sir.

"*Q.* And did you at that time observe anything about that car? *A.* No, it just seemed to be traveling fast.

"*Q.* Then what is the next thing you observed, if anything? *A.* Well, the next I know there was a collision between the Peterson car and the Smaglick car."

On cross-examination she testified that by from two to three blocks she meant from 1,000 to 1,500 feet. The Danow car was some distance east of the intersection and consequently at a distance of not less than 2,000 feet from the Smaglick car when Mrs. Danow made her observation of Smaglick's speed. The trial court was under the opinion that it was impossible to estimate speed accurately

at that distance, especially when the witness was in an oncoming vehicle. The trial court did not specifically state whether it was holding her testimony in this regard inadmissible or whether it considered it of insufficient probative value to support a question on the subject.

Respondents Danow and his insurer cite *Pagel v. Kees* (1964), 23 Wis. 2d 462, 127 N. W. 2d 816, in support of their contention that Mrs. Danow's testimony supported submission of the issue of speed in excess of the posted limit to the jury. In *Pagel* a witness, Fred Harder, testified that as he was driving north at a speed of 40 to 45 miles per hour and was about 1,450 feet past the intersection where the accident occurred, he observed the southbound Kees driving at a speed of 55 to 60 miles per hour. Mrs. Harder, a passenger in her husband's car, testified in effect that after meeting the Kees' car, they proceeded approximately 400 feet when she looked back to the intersection and saw a big cloud of dust. The court held that the jury could consider the testimony on the question of excessive speed in spite of the argument that if Harder were going 45 miles per hour and proceeded 400 feet while Kees traveled some 1,450 feet, this testimony is incredible because it makes Kees' speed 114 miles per hour. The court stated at page 468:

". . . Where one is able to estimate the rate of speed of an oncoming car even though the witness is moving in the opposite direction, the opinion of speed is admissible. Where, however, the witness is unable to judge the rate of speed because of his position, the shortness of the observation, lack of reference points, or other reasons, his opinion is of no probative value, and it is error to admit such testimony. The mere fact the speed of a car is estimated by a person who is traveling in the opposite direction on a straightaway does not necessarily render the estimate of speed of no probative value.

"True, it is most difficult to judge speed of an oncoming car but we cannot say as a matter of law it never can be done to a probative degree. Whether speed under such conditions can be judged to a probative degree is a question to be determined on the facts of each case."

In *Pagel*, however, Harder's testimony was that he met the Kees vehicle traveling approximately 55 to 60 miles per hour. In the case at bar, Mrs. Danow testified that she did not observe Smaglick from the time she first observed him two to three blocks west of the intersection until the time of impact. We are of the opinion that Mrs. Danow's testimony is not credible evidence to support a finding of speed in excess of the posted limits because of her position some 2,000 feet away and because of the shortness of her observation. Consequently, we agree with the trial court's determination in this regard.

Both Mr. and Mrs. Danow testified that after the first impact the Smaglick automobile proceeded at a rate of 50 to 60 miles per hour. The trial court concluded that, since the Smaglick automobile was out of control and swerving and the Danow vehicle was slowing down from 45 miles per hour to 25 miles per hour and since the observation could not have been for more than a few seconds, the testimony was of such slight probative value that it could not sustain a jury verdict in respect to speed over the posted limit. Mr. Danow's testimony is further vitiated in that he did not continuously observe the Smaglick automobile during the short period of time. We agree with the trial court's determination in this regard because of the shortness of the period and because of the unusual circumstances—the swerving of the Smaglick automobile and the decrease in speed of the Danow automobile.

Appellants argue, however, that with the Danow testimony out of the case, the evidence does not support the submission of any issue concerning speed. They reason that since Smaglick must not have been driving over the speed limit he was entitled to assume that the nonarterial driver, Peterson, would not only physically stop for the intersection but would not proceed into the intersection without first ascertaining whether he could do so with safety. *Schlueter v. Grady* (1963), 20 Wis. 2d 546, 123 N. W. 2d 458; *Gaspord v. Hecht* (1961), 13 Wis. 2d 83,

108 N. W. 2d 137; *Plog v. Zolper* (1957), 1 Wis. 2d 517, 85 N. W. 2d 492. Were the issue merely between Peterson and Smaglick, we would have no difficulty in suggesting that Smaglick's speed was not causally negligent under the circumstances of this case. This is true not only because Smaglick owed no duty to Peterson to reduce his speed but also because Peterson's failure to see Smaglick in a wide, flat intersection such as the one here prevents Smaglick's speed from being a substantial factor in causing the accident. But it cannot be said that Smaglick had no duty to users of the highway on which he was traveling with respect to speed. The question therefore remains as to whether Smaglick's speed was too fast for the conditions then present.

There is testimony that Smaglick applied his brakes hard after the impact with the Peterson automobile and still skidded 234 feet east on Highway 100, crossed over from his lane into the Danows'. There is also testimony that the road was wet and the temperature was from 30 to 35 degrees although there is no testimony that the road was slippery. We think that this alone is sufficient evidence to base a finding by the jury that Smaglick's speed was not reasonable and prudent under the circumstances. Cases have held that the physical facts surrounding the accident may create an inference of negligence as to speed. See *Pagel v. Kees, supra; Rodenkirch v. Johnson* (1960), 9 Wis. 2d 245, 101 N. W. 2d 83; *Mackowski v. Milwaukee Automobile Mut. Ins. Co.* (1957), 275 Wis. 545, 82 N. W. 2d 906; *Odya v. Quade* (1958), 4 Wis. 2d 63, 90 N. W. 2d 96.

### *Duplicity in Submission of Speed and Management and Control.*

Appellants argue that under the facts and circumstances of this case the separate submission of speed as an element of Smaglick's negligence was a duplication of the conduct that was considered under management and

control. This argument is constructed on appellants' earlier argument that no issue as to Smaglick's speed exists because he violated no duty to Peterson with respect to his speed. The appellants claim that the question as to speed inquired into Smaglick's conduct in slowing down or stopping to avoid the collision with Peterson after discovering his presence in the intersection under the rule of *Baker v. Herman Mut. Ins. Co.* (1962), 17 Wis. 2d 597, 117 N. W. 2d 725. It is also their position that, on the facts, management and control could properly inquire only about Smaglick's duty to slow down. *See Jennings v. Mueller Transportation Co.* (1955), 268 Wis. 622, 68 N. W. 2d 565, and *Thoms v. Gunnelson* (1953), 263 Wis. 424, 57 N. W. 2d 678, which hold that failure to reduce speed after a dangerous situation has been sighted is properly an element of management and control. But here Smaglick had no duty to slow down at the mere sight of the Peterson vehicle. *Lundquist v. Western Casualty & Surety Co.* (1966), 30 Wis. 2d 159, 140 N. W. 2d 241; *Gaspord v. Hecht, supra.* Therefore, the question of speed must have related to his conduct after Peterson invaded his lane.

It is true that no issue as to management and control existed in connection with Smaglick's conduct when confronted with Peterson's automobile in his own lane, because he had no duty to slow down for traffic he supposed would stop for the arterial highway. It is also true that the issue of speed covered Smaglick's conduct after Peterson appeared in the intersection and that any issue of negligence as to the Danows would involve the issue of speed under the rule in the *Baker Case.* But Smaglick's negligence as to management and control was not deemed causal by the jury and the error was not, therefore, prejudicial; for it cannot be assumed that the jury failed to follow instructions to apportion only the causal negligence.

*Refusal to Instruct.*

In the instant case it would have been preferable if the trial court had given an instruction as to defendant Peterson's duties as a nonarterial driver to maintain a proper lookout and yield the right-of-way, notwithstanding the fact that Peterson admitted negligence with respect to lookout and right-of-way. However, we are of the opinion that the failure so to instruct is not prejudicial and reversible error under the particular facts of this case. Deputy Sheriff Schuster testified that there was a stop sign on Seventy-sixth street and that Mr. Peterson had to yield and stop before he entered Highway 100.

Mr. Peterson testified that he knew there was a safety statute requiring him to stop at a point where he could effectively look to the west and see automobiles coming. The fact of Peterson's negligence as to lookout and failure to yield the right-of-way was emphasized before the jury on several occasions. The jury knew in what respects Peterson was found negligent because they had before them the special verdict in which the court answered the questions pertaining to Peterson's lookout and failure to yield the right-of-way. Here, the jury was also given the general definition of "lookout" in the instruction with respect to Question No. 5 (a), relating to Danow's lookout.

*Lisowski v. Milwaukee Automobile Mut. Ins. Co.* (1962), 17 Wis. 2d 499, 503, 504, 117 N. W. 2d 666, states:

"A judgment will not be reversed on the ground of misdirection of a jury unless this court is of the opinion after an examination of the entire record that the error has affected the substantial right of the party seeking the reversal. Sec. 274.37, Stats."

It does not appear from the record that had a specific instruction been given with respect to Peterson's duty to

yield the right of way a different result would have followed, nor does the apportionment of negligence by the jury reflect the probability that justice miscarried. Under this view the court cannot exercise its discretionary power of reversal and grant a new trial.

*By the Court.*—Judgments affirmed.