Sam HAMDAN and Hala Hamdan,
Plaintiffs-Respondents,

Huga HAMDAN and Sara Hamdan, Plaintiffs,

v.

Jayme M. DAWICKI and Mid-Century Insurance
Co., Defendants-Appellants,

WEST BEND MUTUAL INSURANCE COMPANY,
Defendant.

Court of Appeals

*No. 2005AP1821. Submitted on briefs August 1, 2006.
—Decided September 19, 2006.*

2006 WI App 209

(Also reported in 724 N.W.2d 234.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Douglas J. Carroll* of *O'Neill, Schimmel, Quirk & Carroll, S.C.*, of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Merrick R. Domnitz* and *Anthony J. Skemp* of *Domnitz & Skemp, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Curley and Kessler, JJ.

¶ 1. CURLEY, J. Jayme M. Dawicki and Mid-Century Insurance Co. (collectively, Dawicki) appeal from the judgment entered in a personal injury action following an automobile accident where the jury found Hala Hamdan 13% negligent and Dawicki 87% negligent, but where the trial court changed the jury's answer on grounds of insufficient evidence so as to eliminate Hamdan's negligence. Dawicki also appeals from the order denying her post-verdict motion. Dawicki asks us to reinstate the jury's verdict, maintaining that the court used the incorrect legal standard in changing the answer and that there was credible evidence to support the jury's finding. Dawicki also contends that the trial court erred in refusing to offset costs in favor of Dawicki.

¶ 2. We conclude that there was credible evidence to support the jury's finding and that Dawicki is entitled to have the costs offset. Accordingly, we reverse the judgment, reinstate the jury's answer, remand for entry of a corrected judgment, and order the trial court to

626

offset the costs in favor of Dawicki against the judgment awarded to Hamdan and to enter the new judgment for the balance.

## I. BACKGROUND.

¶ 3.    The incident took place on April 7, 2001, at the intersection of South 68th Street and Rawson Avenue. At this intersection, Rawson Avenue has two thoroughfare lanes, a right turn lane and a left turn lane in each direction, as well as a median strip in the middle. Traffic on South 68th Street is controlled by stop signs.

¶ 4.    Hamdan was driving her minivan east on Rawson Avenue, with her two children and her mother as passengers. She was seeking to go straight and was traveling in the right lane. Dawicki was driving her car south on South 68th Street, and was also seeking to proceed straight. Dawicki stopped at the stop sign, and then moved onto the median. Dawicki then apparently proceeded across the lanes of eastbound traffic on Rawson Avenue in an effort to move through the intersection. Hamdan's and Dawicki's cars collided. While there are conflicting accounts of how the two cars collided, it is undisputed that the collision took place in the lane in which Hamdan was traveling and resulted in damage to the front and left side of Hamdan's car and to the passenger side of Dawicki's car. Hamdan and Hamdan's mother were injured. It appears undisputed that Hamdan had the right of way.

¶ 5.    On December 23, 2003, Hamdan filed suit against Dawicki, alleging that Dawicki's negligence was the cause of the accident. Hamdan's husband, Sam Hamdan, was also named as a plaintiff on claims of loss of society and companionship arising out the injuries to

627

Hamdan.[1] On February 4, 2005, Dawicki filed a statutory offer of judgment in the amount of $12,000, pursuant to WIS. STAT. § 807.01 (2003–04).[2] Hamdan rejected the offer.

¶ 6. The case proceeded to a trial by a jury on February 28, 2005. Hamdan testified that she saw Dawicki, that Dawicki was slowing down at the median and, thinking that Dawicki was going to stop, she accelerated. When Dawicki in fact also accelerated, their cars collided. Dawicki testified that she did not "consciously" see Hamdan, and agreed that she either miscalculated the time it would take her to cross the roadway or simply did not see Hamdan. On cross-examination, when asked whether she could testify to any facts that suggest to her that Hamdan did anything wrong, Dawicki testified that she could not.

¶ 7. At the jury instruction and special verdict conference, Dawicki's counsel requested that the jury be instructed as to comparative negligence. The court felt such an instruction was not warranted, believing there was no evidence to support finding Hamdan

---

[1] The complaint also named Hamdan's two minor children, Sara and Huga Hamdan, who were traveling with Hamdan at the time of the accident, as plaintiffs; however, their claims were dismissed prior to trial and they are not parties to this appeal. The complaint also named West Bend Mutual Insurance Company, Hamdan's medical insurer, as a defendant; however, West Bend Mutual is also not a party to this appeal.

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

WISCONSIN STAT. 807.01(1) provides, in part, that "[i]f the offer of judgment is not accepted and the plaintiff fails to recover a more favorable judgment, the plaintiff shall not recover costs but defendant shall recover costs to be computed on the demand of the complaint."

negligent. Dawicki's counsel responded that if the instruction was not given, the ruling would be appealed. The trial court then advised Hamdan's counsel that it would be up to the plaintiffs to decide whether to include Hamdan on the verdict. Hamdan's counsel agreed to include a question about Hamdan's negligence, and thus requested that the court include it. The court informed the parties that it might change the jury's answers as to Hamdan's negligence.

¶ 8.   The court thus gave the jury the comparative negligence instruction. In his closing argument, counsel for Dawicki did not specifically argue negligence on the part of Hamdan. As the jury was deliberating, counsel for Hamdan asked the court to answer the questions that inquired about Dawicki's negligence "yes" as a matter of law, on grounds that counsel for Dawicki had not argued liability in his closing argument, implying that there was no way the jury could answer "no." The court refused to do so, but indicated that it was prepared to rule as a matter of law that there was no issue as to Hamdan's contributory negligence, and took the matter under advisement depending on the jury's answer.

¶ 9.   The jury returned a verdict finding Dawicki 87% causally negligent and Hamdan 13% causally negligent. The jury awarded Hamdan $8,000 for past pain and suffering, and $4,264.02 for medical expenses, for a total of $12,264.02. The jury did not award Hamdan damages for future pain and suffering, or damages to Sam Hamdan for loss of society and companionship, even though these inquiries were included on the special verdict. There were no dissenting jurors. After subtracting the 13% attributed to Hamdan from $12,264.02, the award would be reduced to $10,669.70.

¶ 10.  Because the jury's award was less than the $12,000 Dawicki had offered, Dawicki would be entitled to costs "to be computed on the demand of the complaint" under Wis. Stat. § 807.01(1). Dawicki filed a motion after verdict for judgment on the verdict and asking the court to offset the amount of her costs against the amount of the judgment in favor of Hamdan; that is, reduce the judgment pursuant to Wis. Stat. § 814.12. The judgment in favor of Hamdan would thus be $10,669.70, minus the costs to Dawicki. Hamdan filed a motion after verdict requesting that the court change the jury's answer as to Hamdan's negligence from "yes" to "no" on grounds that there was no evidence to support the jury's answer. The court denied Dawicki's motion, but granted Hamdan's motion and changed the jury's answer as to Hamdan's negligence, adding that this obviated the need to consider the percentages of causal negligence because Dawicki's percentage was now 100%. The court specifically referenced Dawicki's testimony that she could point to nothing that she believed Hamdan had done wrong. Because, as a result of the court changing the jury's answer, the $12,264.02 judgment exceeded Dawicki's $12,000 offer of judgment, Hamdan is entitled to costs pursuant to Wis. Stat. § 807.01. Dawicki appeals.

## II. Analysis.

### A. Credible Evidence

¶ 11.  Dawicki contends that the trial court erred in changing the jury's answer as to Hamdan's negligence because the court applied the incorrect legal standard and there was credible evidence to support the jury's finding.

¶ 12. In reviewing the sufficiency of evidence on appeal, we view the evidence in the light most favorable to the jury's verdict, and must sustain the jury's verdict if there is any credible evidence "under any reasonable view, that leads to an inference supporting the jury's finding." *Morden v. Continental AG*, 2000 WI 51, ¶¶ 38–39, 235 Wis. 2d 325, 611 N.W.2d 659. We defer to the jury's determination as to the weight and credibility of witness testimony, and if the evidence gives rise to competing reasonable inferences, we must accept the inferences reached by the jury. *Id.*, ¶ 39. We must search the record for credible evidence to uphold the jury's verdict, not for evidence to support a verdict that the jury could have reached but did not. *Id.* This standard applies "both to the circuit court and to 'an appellate court on review of the trial court's determination' of the motion." *Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 388, 541 N.W.2d 753 (1995) (citations omitted). When the trial court decides as a matter of law that there is insufficient evidence to uphold the jury's finding of contributory negligence, this presents a question of law that we review *de novo. See Walter v. Cessna Aircraft Co.*, 121 Wis. 2d 221, 231, 358 N.W.2d 816 (Ct. App. 1984).

¶ 13. We begin by addressing Dawicki's contention that, in granting Hamdan's post-verdict motion, "[i]t did not appear that [the trial court] searched for evidence to *support* the verdict, but was instead looking at evidence *against* it that the jury chose not to accept" (emphasis in brief). Dawicki explains that the court instead "appeared to be strongly influenced by a statement by [Dawicki] that she knew of nothing that [Hamdan] did wrong." We agree.

631

■ ¶ 14.   Having instructed the jury about contributory negligence, the court was required to uphold the jury's finding if there was "any credible evidence" to support it. *See Morden*, 235 Wis. 2d 325, ¶ 38. In ruling on the post-verdict motion, the trial court explicitly acknowledged that "any credible evidence" was the proper standard; however, the court nonetheless appears to have stuck with its initial reaction to Dawicki's request for the contributory negligence instruction—that the instruction was unwarranted. The court, in ruling on the post-verdict motion, made the following comment expressing doubt about its decision to give the instruction:

> I guess I never really thought about it, the implications of that in terms of it changing the standards somewhat, once the jury doesn't, quote "do the right thing" in the eyes of the side that thinks they know what the right thing is.
>
> So what to do about that? Was the court wrong in sort of acceding to [Dawicki's counsel]'s position? Should I have taken a stronger position? Said, I understand you are saying that, [Dawicki's counsel], but I just don't think there is any basis in the record. I'm not going to take the chance. Is that my role? I don't know.

¶ 15.   The court then, seemingly ignoring the "any credible evidence" standard, made the following comment:

> But it seems to me at the end of the day, I'm supposed to do what is right and I view the evidence in the case and I, right or wrong keep coming back to something that Ms. Dawicki said in response to; As you sit here today, is there anything, anything you can criticize Ms. Hamdan for in relation to the causation of the accident?

I'm paraphrasing it. . . . But there was a very strong answer from her that she couldn't. She could think of nothing to criticize Ms. Hamdan for and I understand there was testimony about the four to five seconds and there is some discrepancy about what block of time we are talking about there.

But I still fail to see the connection between that and any negligence on the part of Ms. Hamdan in the causation of this accident.

¶ 16. The trial court certainly appears to have relied on Dawicki's admission on cross-examination that Dawicki could not point to anything that Hamdan had done wrong.[3] It is unclear why the trial court saw the admission by Dawicki that she could not "think of any facts . . . that [she] can testify to . . . that sugg-gest[ed] to [her] that Mrs. Hamdan did anything wrong" as eliminating the possibility that Hamdan was also negligent. Dawicki emphasized that she did not see Hamdan until their cars collided, and testified that she did not know whether Hamdan was negligent, not that Hamdan was not negligent. It is unclear why Dawicki's testimony that she did not know whether Hamdan did

---

[3] The specific exchange between Dawicki and Hamdan's counsel reads:

[COUNSEL FOR HAMDAN]: Question was asked of your deposition and I want to ask you now. As you sit here, Ms. Dawicki, can you think of any facts, facts that you can testify to, to the jury, that suggests to you that Mrs. Hamdan did anything wrong with regard to the operation of her vehicle on the day in question?

[DAWICKI]: Any facts that I know of?

[COUNSEL FOR HAMDAN]: Any facts you can testify to under oath that you know, that she did something wrong with regard to the operation of her vehicle?

[DAWICKI]: No, I do not.

anything wrong should be of any significance with respect to the question of whether Hamdan was negligent. Dawicki's statement does not show a lack of "credible evidence" to support the jury's finding, and does not show that the trial court searched the record for such credible evidence. *See id.*, ¶ 39.

¶ 17.   Accordingly, we must independently examine the record to determine whether credible evidence exists to support the jury's finding. *See Walter*, 121 Wis. 2d at 231.

¶ 18.   We first note that the record shows numerous inconsistencies between Hamdan's and Dawicki's versions of the events. Hamdan testified that she was traveling approximately 35 to 40 miles per hour, in a zone where the speed limit was 40 miles per hour. She said there was nothing obstructing her view of the intersection, that she saw Dawicki's car on her left before the collision, and that in response she took her foot off the gas and moved it to the brake. She stated that she then noticed Dawicki slowing down to about 20 miles per hour and, thinking that Dawicki would stop, she moved her foot back to the gas, at which point the two cars collided. Hamdan explained that when she saw Dawicki accelerate, she had no time to swerve or to move her foot to the brake because she had just moved it to the gas and was accelerating. She was unable to remember whether there were other cars in front of Dawicki's, but said that while she was not observing Dawicki's vehicle the entire time from the time she first saw it, she was observing it "most of the time." According to Hamdan, approximately four to five seconds elapsed from the time she first saw Dawicki slow down until the collision.

¶ 19.   Dawicki, by contrast, testified that she came to a stop at the stop sign behind another car, and that the car in front of her proceeded through the intersection right before her. She stated that she then crossed into the median using normal acceleration, came to a compete stop in the median, looked and did not see any traffic, so she moved forward and was hit by Hamdan. Dawicki agreed that either she did not see Hamdan or, if she did, she miscalculated whether Hamdan was too close for her to proceed, explaining:   "I did not consciously see a vehicle that was going to cause me harm as I was crossing . . . ." She said she was unaware of the impending accident until she was hit, and was therefore unable to later estimate Hamdan's speed or location. On cross-examination, as noted, when asked whether she could testify to anything that Hamdan did wrong, she responded that she could not. According to Dawicki, the impact occurred four to five seconds after she started out from a stop in the middle of the intersection at the median.

¶ 20.   When asked where on the vehicles the impact occurred, Hamdan testified that there were two impacts, and that the first impact was to the left front corner of her car, and the second impact was to the left back side. Hamdan denied that Dawicki's car was in front of hers. A picture of Hamdan's car showed that there was damage to the front and the left side. The investigating officer testified that the damage to Dawicki's car was only to the passenger side of the car, unlike the damage to Hamdan's car that was across the front. Hamdan admitted that this implied that her car hit the side of Dawicki's car, however, Hamdan stated that she did not know whether that meant that Dawicki's car had to be in front of her for that to occur. The officer found no skid marks from Hamdan's vehicle.

Dawicki testified that she was hit on the passenger side only, and that that side of the car was indented. Hamdan testified that her vehicle came to rest in the middle of the intersection, and that Dawicki's vehicle came to rest, facing east "[i]n front of me, way to the right, but in front of me." Dawicki testified that her vehicle came to rest facing east on Rawson Avenue, that is, in the direction Hamdan was traveling.[4]

¶ 21. Dawicki argues that the jury was entitled to, for instance, find Hamdan negligent as to lookout and/or failure to warn. She explains that the jury was entitled to conclude that Dawicki "stopped in the median, and that it took 5 seconds for her to travel to the point of impact," and that based on Hamdan's own testimony that her speed was 40 miles per hour, "that computes to [Hamdan] being 290 feet away when [Dawicki] starts pulling out from her stopped position." She further submits that the jury was entitled to believe that the last time Hamdan saw Dawicki was when Dawicki was slowing to make the stop in the median, and that the next time she saw Dawicki, Dawicki was in front of her as the accident happened, with Hamdan leaving no skid marks. Dawicki also submits that Hamdan's testimony that she saw Dawicki but had no time to stop establishes "that [Hamdan] saw [Dawicki] slowing for her stop in the median, assumed she was going to stop and wait, and never saw her again until just before impact, even though the 5 seconds starts after [Dawicki] continued slowing, stopped, and then looked for eastbound traffic at which point [Ham-

---

[4] Dawicki further testified that after the accident, Hamdan ran toward her car yelling swear words and saying that Dawicki had tried to kill her children, and pounded on her car windows. Hamdan acknowledged yelling at Dawicki and pounding on her car.

dan] was still nearly 300 feet away and only then started out on the way to the impact" (emphasis in brief).

¶ 22.  Hamdan asks this court to affirm the trial court's decision to change the jury's answer, asserting that the jury's finding was based on speculation, not evidence, and that the arguments Dawicki makes on appeal are also mere speculation and are not based on credible evidence.

¶ 23.  We agree with Dawicki. The key to this appeal is the standard of review. As reiterated, we must uphold the jury's finding of negligence if there is "any credible evidence" to support it. *See Morden*, 235 Wis. 2d 325, 38 (emphasis added). As already explained, if any credible evidence exists, it is not up to us to substitute our judgment for that of the jury.

¶ 24.  The record is somewhat one-sided because Dawicki consistently stated that she did not see Hamdan, and could therefore offer no information about the collision until the cars collided, so the only complete version is the one told by Hamdan. Nevertheless, the record does contain a plethora of evidence from which the jury could have reasonably concluded that Hamdan was negligent, for instance, with respect to lookout. *See Schmiedeck v. Gerard*, 42 Wis. 2d 135, 139, 166 N.W.2d 136 (1969) (operator of vehicle that has right of way may assume that those approaching on intersecting roadways will stop before entering intersection, but must still maintain proper lookout); *Gleason v. Gillihan*, 32 Wis. 2d 50, 55, 145 N.W.2d 90 (1966) (proper lookout is comprised of duty of observation and duty to exercise reasonable judgment in calculating position and movement of other vehicles).

637

¶ 25. Given Hamdan's own admissions that the impact took place four to five seconds after she first saw Dawicki, and that she was traveling at a speed of approximately 35–40 miles per hour, the jury could have concluded that because Hamdan was unable to avoid the accident, Hamdan was either not observing traffic or traveling faster than the 35–40 miles per hour. The jury could have, in other words, reasonably deduced that had Hamdan in fact observed Dawicki's car "most of the time," as she testified she did, Hamdan could have slowed down or swerved in time to avoid the accident or to at least lessen the impact, instead of crashing the front of her minivan directly into Dawicki's car. This conclusion is supported by Dawicki's testimony that the impact took place approximately four to five seconds after she started moving from a complete stop at the median, and that she did not see Hamdan. While this is but one way to rationalize the jury's decision to attribute 13 of the causal negligence to Hamdan, and while we can only speculate about what the jury's exact thought process might have been, we are satisfied that there was "credible evidence" to support the jury's finding.[5] *See Morden*, 235 Wis. 2d 325, 38.

---

[5] Dawicki also contends that Hamdan was precluded from arguing that the jury's answer should have been changed on grounds of insufficient evidence because Hamdan did not object to the question of Hamdan's negligence, and in fact, requested it. We decline to address the issue of whether Hamdan waived her right to seek to change the jury's answer because we have already addressed the merits of the argument and determined that the trial court erred in changing the jury's answer. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (unnecessary to address non-dispositive issues).

## B. *Offset costs in favor of Dawicki*

¶ 26.   Dawicki also contends that the trial court erred in denying her motion after verdict, rejecting her request to offset costs owing to Dawicki under WIS. STAT. 807.01 against the judgment owing to Hamdan pursuant to WIS. STAT. 814.12.

¶ 27.   Under WIS. STAT. 807.01, when a defendant serves upon a plaintiff an offer of judgment to be taken against the defendant, and if the offer of judgment is not accepted and the plaintiff fails to recover a more favorable judgment, the plaintiff may not recover costs, but the defendant will instead recover costs to be computed on the demand of the complaint. Sec. 807.01(1).[6] Section 807.01 is intended as a means to promote settlements and to control costs. *See White v. General Cas. Co. of Wis.*, 118 Wis. 2d 433, 438–39, 348 N.W.2d 614 (Ct. App. 1984). WISCONSIN STAT. 814.12 provides:   "If, in any action, a recovery be had by one party and costs be awarded to the other the court may set off one against the other and render judgment for the balance."

---

[6] WISCONSIN STAT. 807.01(1) provides:

After issue is joined but at least 20 days before the trial, the defendant may serve upon the plaintiff a written offer to allow judgment to be taken against the defendant for the sum, or property, or to the effect therein specified, with costs. If the plaintiff accepts the offer and serves notice thereof in writing, before trial and within 10 days after receipt of the offer, the plaintiff may file the offer, with proof of service of the notice of acceptance, and the clerk must thereupon enter judgment accordingly. If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of judgment is not accepted and the plaintiff fails to recover a more favorable judgment, the plaintiff shall not recover costs but defendant shall recover costs to be computed on the demand of the complaint.

¶ 28. Dawicki presented a timely offer to settle the case for $12,000, pursuant to Wis. Stat. 807.01. Hamdan refused to settle for that amount and chose to try the case instead. The jury failed to award Hamdan damages greater than the amount offered by Dawicki. When Dawicki brought the post-verdict motion to offset costs against the judgment awarded to Hamdan, the trial court denied the motion without considering 807.01, evidently based on its decision to change the jury's answer which raised the judgment above Dawicki's offer and rendered Dawicki's motion moot.

¶ 29. Dawicki now contends that in addition to reversing the judgment, reinstating the jury's answer and ordering the corrected judgment, this court should offset the costs in favor of Dawicki against the judgment awarded to Hamdan and direct that the new judgment be entered for the balance, pursuant to Wis. Stat. 814.12. She claims that she should not be required to pay Hamdan without such offset because Hamdan owes her costs under Wis. Stat. 807.01, and it is difficult for her to collect the costs from Hamdan, since the Hamdans have since moved and are no longer living in the United States.

¶ 30. Hamdan contends that Dawicki does not need to have the costs offset because "Dawicki can go out and attempt to collect her costs directly from the Hamdans just as she would be required to do against any other American citizen," and points to the fact that the Hamdans still have Wisconsin driver's licenses and "have every intention of returning to the United States." Hamdan nonetheless insists that "Mrs. Hamdan's counsel has a lien on the verdict for both attorney fees and costs," a lien she alleges is "primary," and that "[i]f the court reinstates the verdict, the entire judgment would be 'eaten up' by this primary lien."

¶ 31. We are unimpressed by Hamdan's argu-
ments. The claim that her attorneys have a lien is
unsubstantiated by the record; however, even if they do
have an attorney lien, it does not influence our decision
with respect to Dawicki's statutory entitlement to costs,
or convince us that Hamdan's attorneys' recovery of
their fees from Hamdan ought to be given priority. As
Dawicki's reply brief notes, it is curious that Hamdan's
attorneys have resorted to a lien to recover their
attorney fees from Hamdan for fear of not being paid,
yet they assert that Dawicki does not need to offset to
recover her costs, indicating that although Hamdan
claims a Wisconsin driver's license and the Hamdans'
alleged plan to return should be sufficient for Dawicki,
they were not enough for Hamdan's attorneys.

¶ 32. Because we are reversing the judgment,
reinstating the jury's answer and remanding this case
for a corrected judgment, the corrected judgment, based
on the jury's verdict, is clearly less than Dawicki's
original offer of settlement that Hamdan rejected. Ac-
cordingly, we also order the trial court to offset the
costs, pursuant to WIS. STAT. 807.01, in favor of Dawicki
against the judgment awarded to Hamdan and to enter
the new judgment for the balance, pursuant to WIS.
STAT. 814.12.

*By the Court.*—Judgments and orders reversed and
cause remanded with directions.